## GODDARD, ET AL. *v.* PARKER.

EVIDENCE—CERTIFIED COPY OF CERTIFIED COPY.—A certified copy of a certified copy is not competent evidence of the contents of the original record, unless made so by statute.

BOUNDARY—AFFIRMING PARTY MUST ESTABLISH BY PROOF.—Where land is described as lying between a boundary line of a certain lot "as laid out" by a person named, and another given line, and the existence of any intervening space is controverted, the party affirming must establish the boundary of the lot "as laid out" by the person named, by competent proof.

COMMON REPUTATION—PRESUMPTION.—Common reputation is competent evidence on questions of private boundary under the statute of this state, and wherever a practical location of boundaries is proven, a presumption arises that it is in conformity with the boundaries originally located, which presumption, in the absence of opposing proof, is sufficient to establish such correspondence.

IDEM.—The force of such presumption is not destroyed by proof of casual expressions of a former owner who neither knew nor professed to know the exact location of the original lines, of his opinion simply in favor of a location somewhat different. Such expressions made without fraud furnish no ground of estoppel.

Estoppel—Burden of Proof.—Where the defense is that land was purchased with reference to and in reliance on the representation of boundaries on a certain map, and an estoppel is claimed, the burden of proving such averment, if denied, is on the defendant.

Idem.—Where the defendant was notified of plaintiff's claim to a certain tract of land the next day after he began to make improvements, and as soon as plaintiffs are shown to have had knowledge of his acts, *Held*, there was no estoppel.

Appeal from Clatsop county.

*E. C. Bronaugh,* for appellant.

*C. W. Fulton,* for respondent.

By the Court, Watson, J.:

The respondents brought this suit to compel appellant to convey to them a parcel of tide land situated on the south side of the ship channel of the Columbia river, and north of lot one, in block three, in the city of Astoria, as laid out by John McClure. They allege in their complaint that they are the owners of a strip of high land, 50 feet wide, and 100 feet long, adjoining said lot on the north, and extending thence due north to the line of ordinary high water mark on the south bank of said river, and were such owners at the time appellant made application and obtained his deed from the state for said tide land, and by virtue of their said ownership had the exclusive right to purchase said tide land from the state, and that the purchase thereof by appellant was without notice to them, unauthorized by law, and a fraud upon their rights as owners of the adjoining shore.

Appellant's application to purchase said tide land was made, and his deed therefor obtained from the state in the year 1876, at which time the owner of the adjoining shore had, under the law, a preference to purchase the tide land in front, and no other person could purchase it without giving such adjoining owner proper notice of his intended applica-

tion for that purpose. It is conceded that no notice was given in this case. The appellant in his answer denies that there is any high land, as alleged in the complaint, and denies that respondents are the owners of any high land between the north end of lot one and the river. He admits making application and obtaining a deed from the state for the tide land in controversy, but denies all charges of fraud and avers his ownership at that time of said lot one, and of the shore in front, and of all intervening high land, if any exists.

For a separate defense he alleges that both parties derive all the title they have or claim, respectively through and under said John McClure, the original proprietor of the shore in front of which said tide land lies. That in the year 1848, McClure laid out said city of Astoria, including said lot one, in block 3, and caused the same to be surveyed and a map or plat thereof to be made. That afterwards, on February 6, 1854, he caused said map to be duly recorded in the office of the clerk of the county where said lands are situated. That upon said map the north end of said lot one is represented and printed as abutting upon, and being bounded by high water mark of said river, and that appellant, and those under whom he claims title, purchased said lot with reference to, and relying upon the boundaries thereof as represented and designated upon said map, and upon the understanding that the north end of said lot abutted or fronted upon the waters of the said river, as shown by said map. That at the time said map was so made and recorded by McClure, and at the time he parted with his title to said lot to those under whom appellant claims, said lot did, at its north end, abut and front upon and was bounded by the tide land of said river, lying between said north end and the ship channel of said river, and that any and all land, if

there be any now lying between said points, has been formed by accretion since said map was made and recorded, and since McClure parted with his title to said lot as aforesaid.

For a further defense, appellant alleges that after purchasing said tide land from the state, he proceeded to place valuable and permanent improvements thereon in good faith, and at great expense, and that respondents stood by and permitted him to do so without objection or notice of their said claim, and are therefore estopped from now asserting it against him. The respondents in their replication, deny all the averments in the answer except the appellants' ownership of said lot one, and the derivation of their title from the same source. The court below decreed conveyance to respondents.

It is unnecessary to make any particular mention of the various mesne conveyances and intermediate descents through which the parties respectively profess to derive title from the common source, to whatever high land may be found to lie between the north end of lot one and the Columbia river. It is not disputed that if there is any such land lying between said points which was not owned by appellant when he purchased the tide land and procured a deed therefor in 1876, it was owned by respondents and they are entitled to the relief they ask, unless estopped by some of the matters alleged in his answer. The respondents having alleged, and the appellant denied the existence of high land between the north end of lot one, "as laid out by John McClure," and ordinary high water mark, they must prove the affirmative throughout by a preponderance of the evidence. The concluding words in the description of lot one, "as laid out by John McClure," are essentially to its identification as the particular tract whose north line forms one of the boundaries of the tract in controversy.

They contain matter of essential description, which must be proved in conformity with the allegation.    (1 Greenleaf Ev., secs. 56 and 62.)

It is urged on behalf of appellant that respondents have furnished no competent evidence on this issue.   The only documentary evidence offered by them is a certified copy of a certified copy of a map purporting to have been acknowledged by John McClure on February 6, 1854, from the files of the board of commissioners for the sale of state lands. Respondents claim that it is admissible because the certified copy of the original map was filed by appellant with said board, as evidence to support his application to purchase said tide land.   But there is no proof of this fact.   It does not appear from the evidence that appellant caused this certified copy to be filed or in any manner assented to its correctness or even knew of its existence; nor is there any pretense that a certified copy of the original could not have been procured just as readily.   Its admissibility as evidence is therefore to be determined by the effect to be given it simply as a certified copy of a certified copy of an original; and in this view it is clearly incompetent and cannot be considered.   Nothing short of an express provision by statute could render such a copy competent evidence and no such provision exists.

The parol evidence produced by the respondents does, however, fix the location of the north line of lot one as it actually exists at the present time, and has existed for some years past, and shows an intervening space between said north line and ordinary high water mark, substantially as alleged by respondents.   Some of the witnesses refer to the record or map as the basis of their knowledge in respect to the size and location of block three in which lot one is situated, while the greater number simply refer to the location and

boundaries of said block and lot as matters within their knowledge, without specifying the sources of their information. But if this testimony should be deemed equivalent to common reputation only, the respondents have made out their case *prima facie*, for under our statute common reputation is itself competent evidence on questions of boundary. (Code, sec. 696.)

Here, then, we have proof of a most satisfactory character, of a practical location of the boundaries of lot one, which we feel bound to presume has been adopted under and with the intention to conform to the original survey and plat executed by McClure in 1848. It is neither shown nor claimed that there has been any subsequent survey or plat made or change of boundary effected. Both parties claim according to the boundaries actually established by McClure.

. We do not hesitate to say that the practical location proven in this case, creates a strong presumption that it is in accordance with the original plat and boundaries of lot one "as laid out by John McClure," which ought to be deemed conclusive in the absence of opposing proof. *Cutts* v. *King*, 5 Greenl. 482, *Floyd* v. *Rice*, 28 Tex. 341.)

To rebut this presumption, certain acts and declarations of the late Judge Cyrus Olney, immediate successor to McClure's title to the premises in controversy, and of his immediate grantees of lot one, and other lots similarly situated, are relied upon by appellant. Judge Olney sold lot one in 1864, to G. W. Cook, under whom appellant derives title, and told Cook at the time that he should always have a landing in front, and no one to disturb him. Cook afterwards built a house on the gravel beach, almost within reach of the highest tides and lived there four and one-half years. If lot one extended to ordinary high water mark,

this house was situated upon it. Olney was at the house after it was built, but said nothing whatever as to its location with reference to the lot.

In 1866 or 1867, Olney sold lot one in block four, in the same row, to I. Driscoll. Driscoll told him he wanted a lot fronting on the river. Olney pointed with his cane to a mark that was about on the line of high water mark, as Driscoll thought, from the location of the drift wood, and stated that he believed the corner was somewhere near that. Olney also told Driscoll no one could go outside of him, and Driscoll got the impression that he had a right to the water front when he bought. He soon after built a house on the lot, as he supposed, from 14 to 16 feet back from the line of extreme high tides. Olney was in this house also, but said nothing as to its location. About this time Olney told William Chance, then sheriff of the county, when the latter proposed to assess him for property in front of this row of blocks, that he did not claim any further out than the town plat already surveyed. He sold Chance lots 2 and 7 in block 2 in the same row in 1868, and stated to him at the time that by buying them, no one could prevent his getting to them from either north or south. W. W. Parker, the appellant, testifies that from conversations had with McClure in 1852, and with Olney in 1861 and 1862, he considered the land in front of lot one in block 3 to be a public levee attached to the property. Both McClure and Olney respectively, told him on these occasions that the lots of the town fronting on the river, as shown by the map recorded in the county clerk's office, carried with them the water front and any space between them and high tide.

After appellant bought lot one, in block 3, he moved the house built by Cook back from the shore and set it on the north end of said lot, in accordance with its present actual

boundaries.   He gives among other reasons for so doing, that said lot one actually ends there "by the map," as he has "found by recent measurements."   It seems quite probable from this testimony that Judge Olney and those purchasing lots from him, were under the impression that the north line of the front row of blocks ran much nearer the river than it did in fact; and that he intended the owners of such lots should have uninterrupted access to the water in front.   But it is evident that he did not know, nor profess to know, the precise location of their north boundary, nor did those purchasing have sufficient ground for supposing that he did know or intended to be so understood.   It is certain, however, that both he and they were dealing with reference to actual boundaries susceptible of definite location and not with reference to mere conjectures made at the time as to their probable situation.   The presumption which arises from a practical location of boundaries attested by numerous witnesses, and fortified by common repute, certainly should not yield to any inference from casual expressions of opinion or belief, which carry on their face the open admission of want of actual and definite information.

We conclude, then, that respondents have fairly, and by a preponderance of competent evidence, established the fact of there being a tract of high land between the north end of lot one, in block 3, "as laid out by John McClure," and the line of ordinary high water mark on the south bank of the Columbia river, as they have alleged in their complaint. There is no testimony tending to show that this tract has been formed by accretion since McClure laid out this portion of Astoria in the year 1848; but the fact is conclusively shown, by the testimony, to be otherwise.

Appellant insists, however, that having plead in his answer that lot one, in block 3, was represented on the Mc-

Clure map as abutting on the tide lands in the Columbia river, and that said lot was purchased with reference to, and in reliance upon such representation, the burden of proving that it did not so abut devolves on the respondents, and that they have offered no evidence upon this point. But that is clearly an affirmative defense which the appellant must prove if he would have the benefit of it. The fact that the respondents charge him with fraud in obtaining his tide land deed from the state cannot have the effect of thus shifting the burden of proof. (*Kent* v. *White*, 27 Ind., 390; *Vedths* v. *Hogge*, 8 Iowa, 163; *Costigon* v. *Mohawk R. R. Co.*, 2 Denio, 609; *Phelps* v. *Hartwell*, 1 Mass., 71 and 335.)

As there is no proof that lot one, in block 3, was represented on the map which McClure caused to be made and recorded as extending to ordinary high water mark, and none that either appellant or those under whom he claims title purchased with reference thereto, and in reliance upon such a representation, we shall dismiss this branch of the defense without further consideration.

The only remaining defense is fully disproved. The appellant is shown to have been notified of respondent's claim to the tide land in controversy, the next day after he commenced to place improvements upon it. He admits himself that he had notice that they objected, the day after he began to make the improvements. There is no evidence showing or tending to show that the respondents did not notify him as soon as they were informed of his taking possession and commencing to make improvements. As he had persisted in going forward with full notice of the respondent's claim, he cannot be heard now to complain of the loss he will suffer if they are permitted to assert their rights. Our conclusion upon all the points raised upon the appeal is that

they have been correctly determined by the court below, and that its decree should be affirmed.

Decree affirmed.