# CHARLESTON.

CARMICHAEL *et al.* v. REED *et al.*

Submitted September 7, 1915. Decided October 5, 1915.

1. JUDICIAL SALES—*Presumption—Judicial Proceedings.*

When offered as evidence of title to land in this state, a deed purporting to be made under judicial proceedings in a Virginia court prior to the formation of this State, or under such proceedings in this state since the formation thereof, raises the presumption, in the absence of evidence to the contrary, that the person executing such deed was authorized by the court to convey the land; but, in the absence of evidence to the contrary, such deed raises no presumption that the title of all persons, which the deed purports to convey, in fact did pass to the grantees, unless at least ten years

shall have elapsed after such deed was duly admitted to record in the county wherein the land is situated. Code, ch. 132, §8a II. (p. 674).

2. EVIDENCE—*Certified Copy—Authentication.*

Though a deed for real estate, situate in' Virginia, acknowledged for record, before the mayor of a city, without that commonwealth, since 1820, be recorded therein, a copy of such instrument, though duly certified, is not admissible in evidence; such authentication of the original being without authority of law, since that date. (p. 676).

3. PUBLIC LANDS—*Inclusive Patent—Excepted Areas—Burden of Proof.*

Where plaintiff, in an action to recover the value of timber, cut and taken from land title to which is asserted by defendant, claims under an inclusive patent, embracing within its exterior bounds excepted areas, the burden rests upon him to locate the exceptions, and to show that the disputed tract lies without them. (p. 677).

4. EVIDENCE—*Records—Certified Copy of Will—Admissibility—Recordation.*

A certified copy of a valid will, duly probated in Virginia, prior to the formation of this state, and authenticated by the clerk of the probate court, if relevant, is admissible as evidence in the courts of this state, though not recorded therein. (p. 678).

5. SAME—*Records—Papers Recordable.*

A copy of a paper, itself purporting to be a copy of the original of record in another state, though duly certified, is not competent evidence of title to lands in this state; a mere copy of the original, though duly certified by the legal custodian thereof, is not, without further verification of its authenticity a paper recordable in this state. (p. 678).

Error to Circuit Court, Clay County.

Action by D. Carmichael and others, partners, etc., against James Reed and another, partners, etc. Judgment for plaintiffs, and defendants bring error.

*Reversed, and new trial awarded.*

*Geo. W. McClintic, H. B. Davenport* and *B. C. Eakle,* for plaintiffs in error.

*J. E. Springston* and *Morrison & Rider,* for defendants in error.

Lynch, Judge:

D. Carmichael and others associated with him as partners brought assumpsit, and, against James and L. J. Reed, recovered judgment therein for the value of timber alleged to have been cut and removed by them from two tracts of land claimed by plaintiffs. From such judgment defendants seek relief by reversal upon various assignments of error.

No question of title is involved as to the tract consisting of 1923 acres, and defendants admit the cutting and removal from 35 acres thereof, by mistake, of timber to which they were not entitled. They, however, do dispute the quantity and value claimed by plaintiffs. From the 31 acres, in the record known as the interlock, timber was cut by both parties. Each claimed and undertook to trace title thereto to patents issued by the commonwealth of Virginia; plaintiffs, to one bearing date December 31, 1795; defendants, to one junior to it. Such proof was necessary, as the ownership of the timber was wholly dependent upon the true title to the land.

Plaintiffs' two tracts have no line, and but one corner, in common. Otherwise they are wholly distinct and separate, though perhaps originally parts of the same grant or patent. Defendants' 1400 acres adjoins both tracts, and it and plaintiffs' smaller tract overlap to the extent of 31 acres, constituting the interlock. To the introduction of the patent to William Wilson for 93,000 acres, dated December 31, 1795, and all subsequent deeds purporting to convey the whole or any part of the original grant, defendants objected, and, after being admitted, they moved to exclude them for various reasons.

Inherently, there was no valid objection to the patent. Nor do defendants claim or point out any. The basis of their motion, and the real motive for their objections severally made, doubtless was the anticipated failure of plaintiffs to connect their title to the small tract with the Wilson grant. Conceding the validity of the patent, we must determine whether plaintiffs have established valid mesne conveyances from it to themselves as owners of the smaller tract, and hence, of the interlock. That there is an apparent interference between plaintiffs' 263 acre tract and defendants'

1400 acre tract, that the quantity and boundaries of the interlock are as claimed, and that neither of the parties has or had *pedis possessio* of the contested acreage, are facts conceded by both parties, though plaintiffs claim possession of the entire acreages of both their tracts under the older title and actual occupancy of the 1923 acres, the title to which is not disputed.

How Benjamin Martin acquired the land patented to Wilson appears only from recitals in Martin's deed to Dennis Wheelen, the deed of Hunt, Wheelen's administrator, to Judah Dobson, and the later deed of commissioner Glassgow to Dobson. The grant to Wheelen recites the issuance of a patent for the same lands to Martin, assignee of Wilson; but no such paper was exhibited. The will of Wheelen, probated at West Chester in the state of Pennsylvania July 14, 1819, after making certain specific bequests and devises, appoints Washington Wheelen, George Fairlamb and Joseph Mc-Clellan executors, and empowers them to sell and by appropriate deed to convey his lands in Virginia and other states, and otherwise carry into effect all the provisions of the will. The persons so appointed having declined the trust, Thomas Hunt was duly appointed in their stead as administrator with the will annexed. He as such conveyed the land to Dobson December 3, 1832. Glassgow's deed to Dobson purports to be based upon a decree rendered April 9, 1841, by the circuit court of Botetourt county, on a bill by Judah Dobson against the widow and heirs of William Wilson and others, finding that "the plat for 93,000 acres of land in said bill described was assigned by William Wilson to Benjamin Martin, that the patent for the said tract of land was issued through mistake to the said William Wilson, that plaintiff had deduced and exhibited a regular title to himself from the said Benjamin Martin for the said tract of 93,000 acres, and that he was therefore entitled to the legal title for the same", and directing the widow and heirs of Wilson to convey the lands to Dobson, and in the event of their failure so to do directed William A. Glassgow as a commissioner appointed for the purpose to execute the conveyance, as he thereafter did. To the admission of these deeds, in the absence of authenticated copies of such of the original papers of the cause as would

identify the land and show that the persons whose title was sought to be affected were indeed parties thereto, defendants objected, and later moved to exclude them for this and other reasons, which objctions and motion the court overruled.   In this respect the court committed error.   For, as against strangers, or those holding adversely under a different title, such recitals, without more, are not evidence of such proceedings or of the commissioner's authority to convey, and do not prove the title the deed purports to vest in the grantee. *Waggoner* v. *Wolf,* 28 W. Va. 820; *McDoddrill* v. *Lumber Co.,* 40 W. Va. 564; *Wilson* v. *Braiden,* 48 W. Va. 196; *Walton* v. *Hale,* 9 Gratt. 196.   While, by virtue of §8a II, ch. 132, Code, the deeds, when offered, did raise the presumption of the authority of the commissioner to convey, that statute can not avail as the basis for the further presumption, thereby authorized in the absence of evidence to the contrary, that the title of all persons which the deed purports to convey under judicial proceedings did in fact pass; for the reason that less than ten years had elapsed since the Glassgow deed to Dobson was admitted to record in the county wherein the land affected is situated.   *McDermitt* v. *Forbes,* 69 W. Va. 268; *Pardee* v. *Johnson,* 70 W. Va. 347; *McGinnis* v. *Caldwell,* 71 W. Va. 376.   The deed was, it is true, recorded July 17, 1867, in Kanawha county, wherein part only of the 93,000 acres was located; July 20, 1907, in Clay county, wherein that part thereof adversely claimed is situated (that county, by an act of the Virginia assembly passed March 29, 1858, being created exclusively out of portions of Braxton and Nicholas counties: Acts Va. 1857-58, ch. 158); and in Nicholas September 9, 1907.   So that, except as to Kanawha, the deed was recorded less than seven years before the trial of the case.

Did the recordation in Kanawha county warrant the use of the deed as the basis of such presumption as to title, conceding the deed to be a recordable paper?   The enactment, it is true, uses the terms "duly admitted to record in *any county*".   But must this language be construed to mean recordation in any county whatever, however remote it may be from the locus of the lands involved, or only that to be evidentiary or presumptive, within the meaning of the statute, the recordation must be in the county wherein the

76 W. Va.

land lies? Evidently, the legislature intended that the enactment should be construed in connection with other statutes relating to the same subject. Doubtless, it had in view the provisions of law rendering void as to creditors and subsequent purchasers, for valuable consideration, without notice, such as were defendants, every conveyance of real estate and every agreement therefor "until and except from the time that it is duly admitted to record in the county wherein the property embraced in such conveyance or deed may be". Code, ch. 74, §§5, 6. That it had in contemplation, also, the definition given, by section 9 of the same chapter, of the words "creditors" and "purchasers", as applied in sections 5 and 6, must also be assumed. When read and construed together, these sections then being in force and effect, the provisions of the act of 1907 (§8a II, ch. 132, Code) must be held to require recordation in the county wherein the real estate involved is situated; and recordation elsewhere will not avail. *Lumber Co.* v. *Turk,* 83 S. E. (W. Va.) 83; *Horsley* v. *Garth,* 2 Gratt. 471.

But, for another potent reason, all plaintiffs' exhibits pertaining to title, including the Wilson patent, either were improperly admitted in evidence, or if properly admitted in the first instance should have been excluded pursuant to defendants' motion. The patent and the deeds conveying the original boundary, which also embraced 3000 acres expressly reserved and excepted, were inclusive grants; and, under the principles laid down in *Cook* v. *Lumber Co.,* 74 W. Va. 503; *Williams* v. *Smith,* 85 S. E. 546, and *Land Co.* v. *Gray,* 73 W. Va. 503, it devolved upon plaintiffs to prove that the interlock was not within such excluded area. As no such proof was offered, denial of the motion to exclude manifestly was erroneous as to the deeds from William K. Smith and others to West Virginia Iron and Manufacturing Company, dated May 1, 1837; from Smith to Shepherd and others, dated November 8, 1836; from Judah Dobson to Smith, dated July 11, 1835; from Glassgow to Dobson, dated September 28, 1853; from Martin to Wheelen, dated March 3, 1796; and the Wilson patent.

Moreover, some of these deeds were improperly admitted for another reason. Though at the date of Martin's convey-

ance to Wheelen, March 4, 1796, and until January, 1820, a deed executed by one not a resident of Virginia, purporting to convey real estate located in that state, properly could be authenticated by an acknowledgment taken and certified by the mayor of any city within the United States (Acts Va. 1785, ch. 90, §5; *Cales* v. *Miller,* 8 Gratt. 6; *Hassler* v. *King,* 9 Gratt. 115), after the latter date a mayor of such city had not that authority. Thereafter acknowledgments taken and certified by him did not make such deeds recordable in Virginia. The Hunt deed, introduced in evidence by plaintiffs as exhibit K, being a necessary link in their chain of title, and purporting to be a certified copy of a deed for real estate, so irregularly authenticated, was not admissible over objection, and should have been excluded for that reason.

The deed from Martin to Wheelen, plaintiffs' exhibit M, should have been excluded on another ground. Apparently, it purports to be a copy of a recorded copy of the original deed, and as such, in the absence of the original or proof of its loss, or due authentication of the copy by re-acknowledgment and due certification, the latter was not a recordable paper, and hence, under the statutes cited (Sections 5, 6 and 9, ch. 74, Code), not notice to defendants as claimants under a distinct and hostile title. A copy of a paper, itself a copy of another, though duly certified and recorded, is not competent evidence of title to lands, except for the purposes authorized by §8, ch. 73, Code, and when objected to should not be admitted. But if the copy be acknowledged by the grantor before a proper officer, and by him certified to the clerk for record, and by the latter to be a true copy, it is admissible as primary evidence of equal dignity with the original, where the original is lost or destroyed. *Baker* v. *Preston,* Gilmer (Va.) 235, 285. Such copy, however, is evidence only against the persons claiming under the grantor subsequent to the authentication. *Ben* v. *Peete,* 2 Rand. 539; *Rowlett* v. *Daniel,* 4 Munf. 473; see also *Peterson* v. *Ankrom,* 25 W. Va. 56. A Texas case held a copy verified by comparison with a certified copy to be inadmissible. *Lasater* v. *Van Hook,* 77 Tex. 650. And in Oregon a certified copy of a certified copy, though of a map, was held clearly incompetent and inadmissible. *Goddard* v. *Parker,* 10 Ore. 102. *Barley* v.

*Byrd,* 95 Va. 516, and *Whitacre* v. *M'Ilhaney,* 4 Munf. 312, state the same rule. In certain circumstances, such copies may be admissible, as stated in 2 Elliott Ev. §1483; 17 Cyc. 329, 517; but whether so here need not be said, as that question does not arise.

Defendants also challenge the admissibility of the will of Dennis Wheelen as evidence of the transfer of title to the 93,000· acres from him to Dobson through the deed of Hunt as administrator. The basis of the objection is that the will was not recorded in this state. But an authenticated copy of it and of the proceedings of the probate court in Pennsylvania had in 1819 according to the laws of that State, was properly admitted to probate in Botetourt county, Virginia, in November, 1840, by a general court, under the authority of Code 1819, vol. 1, ch. 104, §16, passed March 3, 1819. Hence, the propriety of its introduction upon the trial, unless, as defendants contend, it was improperly so introduced because not recorded in some county of this state. That, as we conceive, is the only basis for such objection. But it is not tenable under *Thrasher* v. *Ballard,* 33 W. Va. 285, holding, as appears from the syllabus, that a duly attested copy of a. will recorded in any court of Virginia (wherein the lands here involved were then located) is admissible as evidence in this state. Besides, it is apparent that the recordation thereof in Botetourt county antedated the issuance of the patent of 1857 under which defendants claim title to the 31 acres now in controversy, and hence operated as notice to them, though not recorded here.

A further assignment urged by defendants questions the validity of the sale, and the deed based thereon (plaintiffs' exhibit I), made by James M. Corley as deputy sheriff of Braxton county to Isaac Collison January 26, 1849, on the ground that real estate then was not subject to levy and sale under execution upon a judgment for debt. But, as the provisions of ch. 187, Virginia Code of 1849, limiting the enforceability of judgments by executions against personal property only, except where the judgment was in favor of the commonwealth, did not become effective until July first of .that year (ch. 226, Code 1849), ch. 134, Code 1819, passed February 25, 1819, was not thereby or theretofore repealed, ✦

and was the law on the date the deed was made, so far as a diligent search discloses. That statute did authorize sales of real estate under execution. Besides, it may, and should reasonably, be presumed, in the absence of proof to the contrary, that an officer always acts within the scope of his authority. Code, ch. 7, §15; *Osburn* v. *Staley,* 5 W. Va. 85; *Association* v. *Sohn,* 54 W. Va. 117.

As to the propriety and applicability of instructions given and refused, nothing need now be said, as upon another trial the facts proved may, indeed must, be wholly different, unless the defects pointed out are hereafter cured. For readily is it conceivable that the presence of these various inadmissible papers, offered and introduced as muniments of title to the interlock, may have induced the verdict on which the judgment was rendered. Any doubt that they did so operate enures to the benefit of defendants, and alone warrants reversal, notwithstanding the alternative character of plaintiffs' instruction number three. Nor need the question of jurisdiction by assumpsit, apparently not determined by the trial court, be considered, though raised in argument, except by way of citation of *Parks* v. *Morris* 63 W. Va. 51, holding that form of action improper in a case where title is involved.

These conclusions necessarily require reversal of the judgment and the award of a new trial; and such will be the order.

*Reversed, and new trial awarded.*