# WHEELING.

## PAYNE & GREEN v. WEBB et als.

Submitted January 15, 1884—Decided March 22, 1884.

1. It is the duty of the court before it decrees a sale of land to fix definitely both the amounts and priorities of the liens on it; and the failure to do either will be ground for the reversal of the decree. (p. 563.)

2. Although a decree of sale is entered, which from the facts then appearing is proper, and a sale is made thereunder, it will still be error for the court by a subsequent decree, which sets aside such sale, to order a re-sale of the land, if the facts, then appearing in the cause, show the existence of liens, the amounts and

iorities of which have not been ascertained and fixed. In
ich case the court should set aside the former decree of sale
id refer the cause to a commissioner or otherwise determine
he amounts and priorities of the liens before ordering a re-
sale.   (p. 564.)

The opinion of the Court contains a statement of the case.

*T. L. Brown* for appellant.

*Payne & Green* for appellees.

SNYDER, JUDGE:

Oliver A. Patton, husband and trustee of R. Ellen Patton
and R. Ellen Patton, by deed dated May 29, 1868, conveyed
with covenants of general warranty to William H. Webb a
tract one of hundred and twenty acres of land, lying on the
south side of the Kanawha river in Putnam county, for and
in consideration of four thousand two hundred and one dol-
lars and seventy-five cents, of which the said Webb paid
cash one thousand seven hundred dollars and for the residue
gave his five negotiable notes of five hundred dollars and
thirty-five cents each, of even date with the deed, payable to
the order of Oliver A. Patton trustee at the Merchants
Bank, Charleston, with interest from date; and to secure
the payment of same a vendor's lien was retained in the
deed.   Before their maturity three of said notes were en-
dorsed and delivered by said Patton to the said Merchants
Bank.   On June 30, 1876, a decree was entered by the cir-
cuit court of Kanawha county in a certain chancery suit
pending therein, in which Marie L. Jeffries and others were
plaintiffs and the said Merchants Bank and others were de-
fendants, appointing James M. Payne and S. S. Green
receivers of said bank with authority to take possession,
control and charge of the assets thereof and to collect said
assets by suit or otherwise, using their own names as re-
ceivers in the prosecution of any suit for that purpose.
Among the assets which thus came into the possession
of said receivers as the property of the bank, were the
said three notes given by Patton to the bank.   In order
to enforce the payment of said notes the said Payne and
Green, as receivers, in September, 1878, filed their bill in the

circuit court of Kanawha county against said Webb, Patton, trustee, R. Ellen Patton, Thomas M. Shelto John O. Morris, trustee, alleging therein their appoint as receivers, &c.; that the three notes aforesaid had c into their possession as such receivers; that one of said no was in suit on the law side of said court and the defendant Webb claims to have paid the greater part thereof to the bank; that the other two notes were due and wholly unpaid and operated as a vendor's lien on the one hundred and twenty acres of land aforesaid, and that all the said notes of Webb, except the three mentioned, had been fully paid and discharged; that in May, 1874, Webb conveyed said land to John O. Morris, trustee, to secure the payment of two hundred and fifty-seven dollars and fifty cents to Thomas M. Shelton, payable twelve months thereafter; and that the said three notes and the Shelton debt are the only subsisting liens on said land. They pray that the land may be sold and the said debts paid out of the proceeds and for general relief.

The bill having been taken for confessed as to all the defendants, the court, on December 9, 1879, entered a decree for the sale of said land to pay the amount of the two unpaid notes due the plaintiffs as receivers and the amount of the trust-debt secured to Thomas M. Shelton and the costs of suit.

The commissioner appointed for the purpose made the and reported it to the court. The trust-creditor, Th( M. Shelton, became the purchaser at the price of two t¹ sand three hundred and ten dollars. The report of sale w... excepted to by Webb, but it is not necessary to state the exceptions.

On April 20, 1881, the defendant Webb tendered his bill of review, to the filing of which the plaintiffs objected, but the court overruled the objection and the same was filed; and thereupon the plaintiffs filed their answer thereto. The bill of review and answer relate principally to the conduct of the sale which was subsequently set aside and they need not therefore be further noticed. There was also a special replication to the answer which would not be considered under any circumstances, as such replications violate the most elementary principles of equity pleading and have been

repeatedly condemned by this Court. *Jackson* v. *Hull*, 21 W. Va. 601; *Enock* v. *Oil Co.*, 22 *Id.*

In June, 1881, T. B. Swann was, by petition, made a party defendant to the cause and filed his answer in which he alleges, that the said one hundred and twenty acres of land in the bill mentioned was a part of the lands allotted to the defendant R. Ellen Patton, then Tompkins, before her marriage, in a deed dated April 20, 1867, partitioning the lands of her father, William Tompkins, deceased, among his children; that prior to said partition the other children purchased of C. C. Tompkins, their brother, his interest in the estate of his father and among other things therefor, gave to him their and Mrs. R. M. Tompkins' note for eleven thousand three hundred and fifty-five dollars and seventeen cents at four years, dated July 30, 1866. By the terms of said partition-deed each child charged his and her entire lands with his equal part of said eleven thousand three hundred and fifty-five dollars and seventeen cents; that he, Swann, had paid to John Hall, to whom said C. C. Tompkins had assigned said note, most all of it, and all of said R. Ellen Patton's part of said debt so charged on her land; that the part of Mrs. Patton so charged had been ascertained by decree in the suit of *Lynn* v. *Patton* and others, and the balance due from her and unpaid was fixed by said decree at one thousand three hundred and fifty-eight dollars and sixty-one cents with interest thereon from June 13, 1874; and that besides he, Swann, had paid a large amount of taxes on the land of Mrs. Patton which were still due to him; and that said one thousand three hundred and fifty-eight dollars and sixty-one cents and taxes were the first lien on the land involved in this suit. He, therefore, asked that the proceeds arising from the sale might be applied to the payment of his said debt, taxes and costs—*Lynn* v. *Patton*, 10 W. Va. 196.

At the January term, 1882, the defendant Webb tendered his petition asking that the cause might be re-heard, the decree of December 9, 1879, set aside and all the proceedings had thereunder vacated for the following reasons: (1). The trust-debt of Thos. M. Shelton was partly made up of usurious interest and that he had made payments on it to

the amount of fifty dollars and fifty cents, for which no credit is allowed him by said decree; (2), at the time said decree was pronounced and for several months prior and subsequent thereto, he was from ill-health unfit to attend to business and was at times delirious; (3), that said decree did not ascertain the liens and their priorities on said land, and since its rendition T. B. Swann had been made a party and is claiming a first lien for a large sum; and that the action at law against petitioner mentioned in the plaintiffs' bill had been decided in favor of the plaintiffs.

The cause was again heard on January 11, 1882, and the court entered a decree setting aside the sale of the land made under said decree of December 9, 1879, and after reciting that the action at law against Webb had been decided in favor of Webb, except as to the costs which were ordered to be paid to the plaintiffs, the said decree in all other respects except as to the mode of advertising the land, was re-affirmed, the defendant Webb's bill of review dismissed and his petition for a re-hearing rejected, and the commissioners were directed to re-sell the land pursuant to the provisions of said former decree. From this decree and that of December 9, 1879, the defendant Webb has appealed to this Court.

A number of errors are assigned in this Court in both of said decrees, but in the view we take of the cause as presented by the record, it is only necessary to consider such of them as relate to the re-affirmation of the decree of December 9, 1879, by the decree of January 11, 1882, and the ordering of a re-sale of the land without ascertaining and fixing the amounts and priorities of the debts operating thereon as liens. For, although the decree of December 9, 1879, may have been proper as the facts appeared at the time it was made, yet as the facts appearing at the time the subsequent decree was entered were essentially and very materially different, and the sale having been set aside by that decree, the court should not then have ordered a re-sale of the land unless the facts then appearing warranted such order. The only enquiry then before this Court is did the court err in entering the decree of January 11, 1882, without having first ascertained the debts and the priorities of

the liens appearing in the record at the time that decree was entered ?

It has been repeatedly decided by this Court as well as elsewhere, that it is the duty of the court before it decrees a sale of land to definitely fix the amounts and priorities of the liens on the land, and that it is error not to do so for which the decree will be reversed—*Wiley* y. *Mahood*, 10 W. Va. 206; *Scott* v. *Ludington*, 14 *Id.* 387; *Beard* v. *Arbuckle*, 19 *Id.* 135; *Cralle* v. *Meem*, 8 Gratt. 530.

The reason of this rule is obvious.   If a sale is made without fixing the rights of the creditors, they being the persons interested in the sale and most likely to become bidders for the property, they may . be deterred from bidding, and the property may thus be sold for less than it would have otherwise been sold.   The tendency would be to sacrifice the property if sold under such circumstances.   But if the amounts and priorities of the liens of the creditors are definitely ascertained and fixed, then each creditor knows to what extent it is required for him to bid to save his debt or what credit he will receive on the purchase-money by reason of his debt and thus measure his ability to pay for the property in the event he should become the purchaser.   The duty of the court. to fix the amounts and priorities of the debts is one which it owes not only to the debtor but to the creditors also; and, although the debtor may be in default and not entitled to complain of the action of the court, still the rights of the creditors, who are not in default, must be protected, and if disregarded it will be error for which the decree will be reversed—2 Rob. (old) Pr. 385.

The facts in the cause before us show that there were certainly three distinct and separate liens on the land at the time the re-sale was decreed.   The priorities of none of these liens had been then fixed, nor were they fixed by the decree, and as to two of said liens, the amounts were not even ascertained.   The trust-debt of Shelton was attacked as usurious and credits claimed against it.   But the most serious matter was the debt of T. B. Swann.   This debt is shown to be a lien on a large quantity of land of which the land to be sold was only a part.   What part of this debt, if any, was chargeable upon this land it is impossible from the record to deter-

mine, nor could either Swann or any other creditor know how to bid with reference to that or any of the other liens. It may be conceded that it was the first lien, but that does not remove the difficulty. The amount for which it is a charge on the land, is equally as important as its priority. If the defendant, R. Ellen Patton, owned any part of the lands conveyed to her, by the deed of partition between the heirs of William Tompkins, after she made the deed of May 29, 1868, to the defendant, Webb, then such part would have to be exhausted before subjecting the Webb land to the payment of any part of said debt—*Conrad* v. *Harrison*, 3 Leigh 532; *McClung* v. *Beirne*, 10 *Id.* 394. This, therefore, may or it may not have been a charge against the Webb land, which was ordered to be sold. If it had been fixed definitely as a charge then Swann would have been interested in the sale to see that the land brought his debt, and if it was not a charge then the debts of the plaintiffs and Shelton would be more likely to be paid from the proceeds of the sale and they would then see that the land was not sacrificed to their loss. So in any event it was necessary to have both the amount and priority of this lien as well as the priorities of the other liens fixed before a sale could properly be directed. And this does not at all depend upon the propriety or the impropriety of the decree of December 9, 1879. That decree may have been entirely proper as the facts appeared when it was entered and sale made, but when the court set aside that sale, it should not have directed a re-sale unless the cause and the facts then appearing justified such order. It is the facts existing at the time the sale is made which will tend to sacrifice the property or appreciate the price; and certainly when facts appear in the record at the time the sale is ordered it is error to order a sale until all legal obstacles to a fair and advantageous sale are removed.

I am, therefore, of opinion that, for the errors aforesaid, the said decrees of December 9, 1879, and of January 11, 1882, should be reversed with costs to the appellant; and that this cause should be remanded to the said circuit court with directions to refer the same to a commissioner to ascertain the amounts and priorities of all the liens on the said one hundred and twenty acres of land before again ordering

a sale thereof, and for further proceedings to be had therein according to the principles announced in this opinion.

REVERSED.   REMANDED.