# CHARLESTON.

WESTINGHOUSE LAMP COMPANY v. INGRAM *et al.*

Submitted October 31, 1916.    Decided November 21, 1916.

1. CREDITOR'S SUIT—*Sale of Lands—Conditions Precedent.*
    A judgment debtor's real estate can not be decreed for sale to pay the judgment liens thereon until such real estate has been properly ascertained and it appears to the court that the rents and profits thereof will not satisfy such liens within five years. (p. 221).

2. JUDGMENT—*Liens—Rights of Purchaser—Equitable Title.*
    A purchaser of land by parol contract, which has been so far executed as to vest in him the right to compel his vendor to execute the parol contract in a court of equity, has an equitable right in said land so purchased, which a court of equity will fully protect against a lien of a subsequent judgment creditor of his vendee.    (p. 224).

3. SAME—*Liens—Right of Judgment Creditor.*
    When statute enactments do not interfere, a judgment creditor can acquire no better right to the estate of the debtor than the

debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist in favor of third parties; and a court of equity will limit the lien of the judgment to the actual interest which the debtor has in the estate. (p. 224).

Appeal from Circuit Court, Preston County.

Bill in equity by the Westinghouse Lamp Company against W. S. Ingram, A. S. Albright, and J. Ami Martin. From the decree the last-named defendant appeals.

*Affirmed in part. Reversed in part. Remanded.*

*Vester B. Dunn,* for appellant.

*P. J. Crogan,* for appellee.

MASON, JUDGE:

Two parcels of land were decreed for sale to pay debts. There were judgment liens on both parcels, and a vendor's lien on one of them. The cause was referred to a commissioner for the purpose of ascertaining the liens. The commissioner's report shows the liens on the two parcels, and their priorities. The cause was appealed to this court. The decree of the circuit court was reversed, and the cause remanded. 70 W. Va. 664. The bill was amended and other proceedings had in the circuit court. Many of the debts were paid in the meantime, and another decree was entered on the 24th day of April, 1914. This appeal is from that decree. That decree directs the sale of the land for the payment of the debts decreed for in the former decree except the claims admitted to have been paid since the rendition of that decree and some disallowed. The defendant J. Ami Martin, one of the defendants, complains of this decree, for the reason that the court did not ascertain by the commissioner's report or otherwise that the rents and profits of said lands would not have satisfied the liens in five years, as required by section 7, chapter 139 of the Code.

It is contended by appellees that Martin, the appellant, has no interest in this question, and is therefore not aggrieved by the decree and can not maintain the appeal; that he did

originally claim a large sum secured by deed of trust on this property, but that his claim had been canceled and is no longer claimed by him as shown by his answer filed in the case. It is conceded that Martin is not now seeking to collect the money due on his deed of trust, and that it is not reported as a debt, but it is said by counsel for him that subsequent to the first decree Martin paid a large number of the debts and took a conveyance of the real estate from Ingram. It is claimed that he is now the owner of all the property, and if so is of course interested in the payment of the liens. This does not very clearly appear. Mr. Martin's deposition was taken in the case on the 14th day of November, 1913, and the decree complained of was made April 24, 1914. He was asked whether he was the owner of the Fike-Jenkins lot. He replied: "The title is still in me, so far as the records show. I have a contract under which I have sold it to another party as soon as they get the litigation out of the way." This clearly shows his interest in one of the lots, and some of the judgments are liens on both. The clerk of the circuit court certifies that some of the original papers have been taken from the files. They are not supplied. It is said that if these papers could be found, they would show that Martin had taken a conveyance for the entire property, and that he was the owner thereof. In the absence of proof, this of course can not be considered here. But, as we have seen, it does appear without dispute that Martin owned the Jenkins lot, parcel No. 2, and that some of the judgments are liens on both parcels. So that it would be error to decree a sale of this parcel if the rents and profits will provide enough to satisfy the judgments in five years. Martin would have the right to have the other parcel bear its part of the debt. All the debtor's land subject to the judgment lien would have to be considered in determining whether it should be sold or rented. Hence Martin would have the right in equity to have the judgments enforced against both, according to law. Under all the facts and circumstances we think Martin has the right to demand that the judgment liens be enforced against the real estate herein mentioned, in the manner required by law.

The original suit was brought by a judgment creditor, attacking Martin's deed of trust as fraudulent, and asking to have his judgment enforced against the real estate. Upon appeal, this court held, 70 W. Va., *supra,* that the deed was not fraudulent, but that it created an unlawful preference, and the case was remanded. Other persons were made parties, and the case proceeded as in a creditor's bill. All the liens proven and allowed are judgment liens except one, which is a vendor's lien on one of the parcels only. The law does not require the real estate to be rented when the proceeding is to enforce a vendor's lien. *Moreland* v. *Metz,* 24 W. Va. 119. This would apply to a parcel on which there is a vendor's lien in favor of A. S. Albright, but he is not asking for a sale, and the court would not be compelled to sell unless he asked it. He may be considered as having waived his, rights to have the parcel, on which he has a vendor's lien, sold. Albright would be entitled to be paid first out of the proceeds of sale or lease of the lot on which he has a vendor's lien, but he could waive the right of having it sold. The judgment creditor could not by joining in his bill a creditor having a vendor's lien, have a decree for sale without the demand of the person holding the vendor's lien for such decree. The law is plain as to the duty of the court in enforcing judgment liens against real estate. It says: "If it appear to such court that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years, the court may decree the said real estate, or any part thereof to be sold and the proceeds applied to the discharge of the judgment." Section 7, chapter 139 of the Code. This is a condition precedent to the right to sell. No sale can be had unless the rents and profits will not satisfy the judgment in five years. This must affirmatively appear. This has been the law since 1882. *Newlon et al.* v. *Wade et al.,* 43 W. Va. 283; point 3 of the syllabus, *Dunfee* v. *Childs,* 45 W. Va. 155.

The cases of *Rose* v. *Brown,* 11 W. Va. 122; *Hill* v. *Morehead,* 20 W. Va. 429; and *Duncan* v. *Custard,* 24 W. Va. 730, cited by counsel for appellees, were cases arising prior to

1882. The law in this regard in this state from the time of the adoption of the Code of 1868 until the act of the Legislature of 1882, was: "Upon a bill to enforce a judgment lien, the court may decree a sale of the land; but it is not bound, and ought not to decree such sale, if the rents and profits of the land will satisfy the liens charged upon it in a reasonable time, unless consent to such decree be made." *Rose* v. *Brown, supra.* Section 9, chapter 186 of the Code of Virginia was the same as our statute of 1882 until the Code of 1868; but this provision was omitted from the Code of 1868, and was not restored until 1882. But since the adoption of the act of 1882, real estate can not be sold by a court to enforce a judgment lien, if the rents and profits of the real estate in five years will satisfy the debt, interest and costs, and this must be ascertained by the court in some way before making a decree for sale. It was reversible error not to have ascertained whether the rents and profits of the property would satisfy the lien and charges in five years.

The defendants Offutt & Lakin, Terra Alta Bank, and C. W. Jackson, by way of cross assignment of error, complain of said decree because it holds that the judgments held by them against J. J. Jenkins are not liens on the lot of ground conveyed by Jenkins to Martin, and by Martin to Ingram. The questions arising in the record in regard to these judgments were not passed upon by this court when the case was before us on the former appeal for the reason that Jenkins, the judgment debtor, was not then a party to the suit. The facts in relation to these judgments are that Martin owned two lots called parcel No. 1 in this proceeding. On one of these lots there was an electric light plant called the "old electric light plant." Jenkins operated this plant under some contract with Martin and owned a lot adjoining the plant, which he had bought from Amos Fike at the price of $450.00, of which $50.00 was paid. About February, 1907, Martin and Jenkins made a verbal contract by which Jenkins was to surrender to Martin the contract between them by which Jenkins had been operating the electric light plant, and Martin was to have the Fike lot by paying the balance of the purchase money and the $50.00 which Jenkins had paid to Fike. Jen-

kins placed Martin in possession of the Fike lot at the time the sale was made. Jenkins had a deed from Fike, but it was not recorded. Martin says that this deed was to be surrendered to Fike and that he (Fike) was to make him a deed. This was not done. Jenkins had his deed recorded February 7, 1908—about a year after this verbal contract was made. In the meantime some judgments were had against Jenkins. Within a few days after this contract was made between Martin and Jenkins, Martin made a contract with the defendant Ingram to take charge of the electric light plant, with the privilege of purchasing same. Martin placed Ingram in control of the property including the Fike lot, and expended a large sum of money in erecting a new electric light plant on the Fike lot. Martin had the entire possession of the said lot through his contract with Ingram, claiming it as his own, and furnished about $18,000.00 for the improvements. Jenkins surrendered possession and admits the title and possession of Martin. On the 5th day of March, 1908, Martin got a deed from Jenkins, and had it recorded March 7, 1908.

The judgment of the Terra Alta Bank was admitted to record in the judgment lien docket of Preston County December 17, 1907; one of Jackson's February 7, 1908, and another March 5, 1908; Offutt & Lakin's judgment was recorded February 15, 1908. It will be observed that all of these judgments were recorded before. Martin's deed from Jenkins for the Fike lot was recorded. The circuit court held that these judgments were not liens on the Jenkins lot, for the reason that at the time they were rendered the lot belonged to Martin by the verbal contract above stated. Is their contention maintainable under the laws of this state?

There is no dispute as to the fact that Martin bought this lot from Jenkins about February, 1907; nor is there any dispute as to the fact that he began in a few days after the purchase to make valuable improvements on the lot costing something like $18,000.00. His possession by himself and through Ingram holding under him, was open, notorious and exclusive, claiming it as his own. The judgment creditors contend that because Martin had not paid the purchase money of

$450.00 for the lot that he is not protected against these judgments rendered subsequent to the purchase.

Whatever may be the law in other jurisdictions, it is now well settled in this state that: ''A purchaser of land by parol contract, which has been so far executed as to vest in him the right to compel his vendor to execute the parol contract in a court of equity, has an equitable right in said land so purchased, which a court of equity will fully protect against the lien of a subsequent judgment-creditor of his vendor. When statute enactments do not interfere, a judgment-creditor can acquire no better right to the estate of the debtor than the debtor himself has when the judgment is recovered. He takes it subject to every liability, under which the debtor held it, and subject to all the equities, which exist in favor of third parties; and a court of equity will limit the lien of the judgment to the actual interest, which the debtor has in the estate.'' *Snyder* v. *Martin et al.*, 17 W. Va. 276, syl. 6 & 7. ''When a party has purchased land by parol contract, and has been put in possession of the same, so that he has a valid equitable title thereto, said land is not subject to judgments recovered against his vendor after the sale, and possession has been taken in pursuance thereof.'' *Snyder* v. *Botkin*, 37 W. Va. 355, syl. 1. See also *Biern* v. *Ray*, 49 W. Va. 129; *Smith* v. *Gott*, 51 W. Va. 141; *Lamp Company* v. *Ingram*, 70 W. Va., at page 669.

This property consisted of three lots. On two of them, called parcel No. 1 in these proceedings, there was a dwelling house and an electric light plant known as the ''old electric light plant.'' The other lot, parcel No. 2—the Jenkins-Fike lot,—was an unimproved lot when Martin bought it. On this lot was erected what is called the ''new electric light plant'', at an expense of about $18,000.00. Martin took possession as soon as he purchased it, began the improvement, and had expended large sums on it before the judgments were rendered. He did not mislead these creditors, nor did he disregard any registry laws by failing to have his title papers recorded, for the reason that he had no written contract with Jenkins. But he had open, notorious, undisputed, and continuous possession of the lot and was making these

large improvements on it.  Jenkins had nothing but the legal title, and Martin had the right to have Jenkins convey the legal title to him.  It is the law of this state that written contracts for the sale of real estate unrecorded are void as to creditors, etc., but it is equally well settled that a parol contract so far executed as to entitle the purchaser to a specific execution of the contract is good against a subsequent judgment creditor.  We are of opinion that the court did not err in declaring the said judgments not to be liens against this lot.

The decree of sale entered April 24, 1914, is subject to additional criticism.  This cause was referred to a commissioner on the 8th day of December, 1909, "for the purpose of ascertaining the amounts due unto the plaintiff and the petitioning creditors herein mentioned and any other liens and debts properly chargeable against said W. S. Ingram."  The commissioner made his report March 1, 1909, and filed the same.  This report shows that there were a large number of creditors—about thirty.  The real estate upon which the debts are liens, and their priorities are also reported.  By decree entered June 18, 1909, this report was confirmed, except as to a debt due this appellant, and sale directed.  That decree was reviewed by this court, and reversed.  The cause was remanded to the circuit court.  The bill was amended; new parties were made.  Quite a number of the debts named in that report and decreed had been paid in full or in part since said report was filed.  Some were disallowed by the decree of April 24, 1914, leaving it, to say the least of it, difficult to ascertain what debts were properly chargeable as liens on this property when this decree was made.  By this decree of April 24, 1914, now complained of, the court ascertained that certain debts had been paid, and that certain judgments reported as liens were not in fact liens on this property, and then decreed that, "unless the said W. S. Ingram, or some one for him, do within thirty days from the rising of this court pay to the parties entitled thereto the liens heretofore reported against the real estate in the bill and proceedings mentioned as shown by the report of J. W. Watson, Commissioner in Chancery, heretofore filed herein,

and as decreed in the decree confirming said report and ordering sale of said real estate, entered on the 18th day of June, 1909, with the following exceptions,'' etc. It does not show on its face with sufficient certainty and definiteness the amount and priorities of the liens against the land. A decree for the sale of land for the payment of liens, should show on its face the amount of every debt, the person to whom payable, the priorities, and the fund out of which each is to be paid. *Bank* v. *Wilson,* 25 W. Va. 242; *McCleary* v. *Grantham,* 29 W. Va. 301; *Hart* v. *Hart,* 31 W. Va. 688; *Hull's Admr.* v. *Hull's Heirs,* 35 W. Va. 155.

We are of opinion to reverse so much of the decree as directs a sale of the real estate without ascertaining whether the rents and profits will satisfy the liens in five years, and to affirm so much of it as declares that the judgments of Offutt & Lakin, Terra Alta Bank, and Charles W. Jackson are not liens on said real estate; and the cause will be remanded to the circuit court of Preston County for further proceedings to be had therein.

*Affirmed in part. Reversed in part. Remanded.*