# CHARLESTON.

ABNEY-BARNES COMPANY *et al.* v. DAVY-POCAHONTAS COAL CO. *et als.*

Submitted January 28, 1919. Decided February 4, 1919.

1. CREDITORS' SUIT—*Mortgages—Sale of Property—Reduction of Incumbrances.*

   In a suit to enforce payment of judgment, mortgage and trust liens by a sale of the encumbered property, a productive coal mining property, a substantial fund derived from it through a receivership should be applied to reduce the encumbrance before decreeing a sale of the land. (p. 303).

2. MORTGAGES—*Trust Deed—Production of Notes and Bonds—Sale.*

   Ordinarily, notes and bonds secured by trust or mortage deeds should be produced and the holders thereof identified, or the absence of both explained or accounted for, upon a reference to a commissioner, before decreeing a sale of the encumbered property. (p. 297).

3. SAME—*Sale of Property—Decree—Description.*

   But where the plaintiffs' bill and the answers of the trustees sufficiently describe the notes and bonds and give the total amount thereof, and the debtor does not deny their existence or question their validity, the description will be accepted as true, and for the purpose of the decree of sale the bonds and notes treated as valid and subsisting liens upon the property, without proof of their amount or the identity of the holders thereof before the entry of such decree. (p. 297).

4. SAME—*Trust Liens—Sale—Production.*

   It suffices to protect the debtor to require the holders of such notes and bonds to produce them for the adjudication of all questions connected therewith before the entry of the decree directing the distribution of the proceeds of sale. (p 297).

5. CREDITORS' SUIT—*Discharge of Lien from Rents and Profits—Burden of Proof.*

   Before decreeing a sale of property encumbered by liens, a court in a foreclosure suit ordinarily should ascertain by a ref-

erence to a commissioner or by an express adjudication based upon the pleadings or upon facts disclosed and not controverted, whether the rents, issues and profits of the property will be sufficient to discharge the liens within five years.  (p. 300).

6.  SAME.

When such ascertainment is necessary, the burden of establishing the insufficiency of such returns rests upon the creditor. (p. 300).

7.  EQUITY—*Discharge of Liens by Rents and Profits.*

But if the bill alleges and the respondents in their answers do not deny that the rents, issues and profits likely to accrue from the property will not within that period be sufficient to satisfy and discharge the liens, no such preliminary investigation need be made.  (p. 300).

8.  MORTGAGES—*Foreclosure—Sale—Rental Value of Land—Ascertainment.*

In a suit to foreclose definitely described mortgage and deed of trust liens, where the instruments provide for a sale for cash on default of payment, such a sale ordinarily may be decreed without an ascertainment of the rental value of the land. (p. 301).

9.  BANKRUPTCY—*Suit to Foreclose—Stay Pending Bankruptcy Proceeding.*

Such a suit begun in a state court generally will not be stayed upon the petition of the debtor filed therein based upon the pendency of a proceeding in bankruptcy against him instituted in a federal court six months thereafter.  (p. 302).

10.  COURTS—*Concurrent Jurisdiction—Jurisdiction First Acquired—Effect.*

The general rule concedes to the court which first regularly acquires jurisdiction of the subject matter and the parties the superior right to proceed unmolested to the final determination of the controversy involved therein.  (p. 302).

11.  CREDITORS' SUIT—*Foreclosure and Sale—Redemption.*

A decree to sell land to satisfy liens thereon should accord to the debtor a reasonable time to redeem, and failure to do so is cause for reversal.  (p. 305).

12.  MORTAGES—*Redemption—Reasonable Time.*

What is a reasonable time for such purpose is to be determined from the circumstances of each case.  (p. 305).

13.  SAME—*Foreclosure and Sale—Redemption—Advertisement.*

The period given by a decree of sale for advertising notice thereof is not the equivalent of a day to redeem.  (p. 305).

14. SAME—*Foreclosure—Redemption.*

The giving of a day to redeem is not required in a foreclosure suit where the instrument to be foreclosed is a deed of trust and it prescribes the terms and conditions of the sale upon default. (p. 305).

15. SAME—*Foreclosure and Sale—Redemption.*

But in such foreclosure suit, where the deed of trust provides only for a public sale, if the court first authorizes a private sale to be conducted by the receivers, and directs a public sale to be had only in case a private sale cannot be effected in the time allowed, a reasonable time and opportunity to redeem the land shoulud be accorded the debtor. (p. 306).

16. SAME—*Deed of Trust—Sale—Advertisement.*

Likewise, where the deed of trust prescribes advertisement of the time, place and conditions of the foreclosure sale for eight consecutive weeks, it is error for the decree to provide for only four weeks' advertisement. (p. 306).

17. SAME—*Enforcement of Lien—Priority—Sale.*

A mortgagee does not lose any substantive rights by being compelled to enforce his trust lien in a pending judgment creditors' suit, and where the lien of the former has priority, the time and terms of the sale will ordinarily be determined by the provisions of the trust deed, not by rules applicable to the enforcement of judgment creditors' liens. (p: 301).

Appeal from Circuit Court, McDowell County.

Representative suit by Abney-Barnes Company and others to enforce certain judgment liens against Davy-Pocahontas Coal Company, W. L. Taylor, and another, and the Mercantile Trust & Deposit Company of Baltimore and the Equitable Trust Company, consolidated with suit by A. G. Russell, Jr., against W. L. Taylor. Case referred to a commissioner to report an account, and exceptions to report by Davy-Pocahontas Coal Company and W. L. Taylor, and answers by the Mercantile Trust & Deposit Company and the Equitable Trust Company seeking the foreclosure of deeds of trust and the discharge of receivers, with another reference and exceptions to report by Davy-Pocahontas Coal Company and W. L. Taylor, and decree directing receivers' sale of property of Davy-Pocahontas Coal Company unless it should pay the amount of indebtedness, and the Davy-Pocahontas Coal Company and W. L. Taylor appeal.

*Reversed and remanded.*

*Strother, Taylor & Taylor,* for appellants.

*Anderson, Strother, Hughes & Curd,* for appellee Abney-Barnes Co.

*Haman, Cook, Chestnut & Markell, France, McLanahan & Rozier, Brown, Jackson & Knight, Graham Sale* and *J. Randolph Tucker,* for other appellees.

LYNCH, JUDGE:

Abney-Barnes Company, a corporation, and others, who sue on behalf of themselves and all other lien creditors of Davy-Pocahontas Coal Company, obtained the decree from which Davy-Pocahontas Coal Company and W. L. Taylor have appealed. The decree ascertained the corporate property of the defendant coal company and the amount and priority of the liens chargeable thereto, and directed it to be sold to satisfy and discharge the liens reported by the commissioner to whom the cause was twice referred. The property consists of about 4,000 acres of valuable coal land in McDowell County with two well-equipped and active coal mining operations.

The object of the suit instituted in the circuit court of McDowell County July 10, 1915, is to enforce certain judgment liens against the defendants, Davy-Pocahontas Coal Company, W. L. Taylor and James A. Strother, in favor of plaintiffs, Abney-Barnes Company and others. The bill also names as defendants the trustees in two mortgages or deeds of trust, promptly recorded, in which the Davy-Pocahontas Coal Company is grantor, and which convey its real and personal property, the first being to the Mercantile Trust & Deposit Company of Baltimore, dated July 1, 1910, to secure a bond issue of $300,000, all of which, except bonds aggregating $3,000, paid off and retired, is outstanding, the other to the Munsey Trust Company (now Equitable Trust Company), dated June 1, 1913, to secure a note issue of $125,000, of which $80,000 issued and sold is outstanding, the remainder, issued but not sold, being pledged as collateral security for debts of the corporation. On October 9, 1915, this case was consolidated with the case of A. G. Russell, Jr., against the defendant, W. L. Taylor, and the con-

solidated cases referred to G. L. Counts, commissioner, to report an account showing (1) the description and, quantity of all the real estate owned by the judgment debtors therein; (2) the liens upon said real estate, by whom held, their respective amounts and priority; (3) whether the rents, issues and profits of said real estate will in five years yield a revenue sufficient to pay off and discharge the liens and the costs of the suit.   On November 4, 1915, W. L. Taylor filed his answer and cross-bill asking for the appointment of receivers for the property, in conformity with which the court appointed two, who accepted the position and have since had charge of the property.

While the suit was pending, the Mercantile Trust & Deposit Company, one of the trustees, instituted a suit in the federal court for the southern district of West Virginia against the Davy-Pocahontas Coal Company to obtain the foreclosure of the mortgage in which it was trustee.   This relief was refused, but the court ordered the case retained on its docket while this suit remained undetermined. . Later other creditors filed a petition in involuntary bankruptcy in the same court against defendant coal company, which petition also is still pending.

On September 12, 1916, commissioner Counts filed his report, to which certain exceptions were filed by Davy-Pocahontas Coal Company and W. L. Taylor, those of the latter, however, being later withdrawn.   At the June, 1917, term of the circuit court the Mercantile Trust & Deposit Company and the Equitable Trust Company filed their answers in the cause, set up their deeds of trust, alleged certain defaults thereunder by the Davy-Pocahontas Coal Company and asked that the foreclosure rights under the deeds of trust be protected, and to that end prayed that the receivers be discharged and the trustees permitted to proceed to foreclose, or that the court compel the receivers to sell the property covered by the deeds of trust; to which answers general replications were filed by W. L. Taylor.

On June 29, 1917, on motion of the trustees, the court again referred the cause to commissioner Counts to state specifically certain facts respecting the liens of the trus-

tees, which report he filed October 22, 1917, and to which W. L. Taylor, Davy-Pocahontas Coal Company and others excepted. On October 29, the Davy-Pocahontas Coal Company and W. L. Taylor tendered and asked leave to file their petitions setting up the pendency of the bankruptcy proceeding in the federal court, and asked the state court to stay the prosecution of this suit to await the result of the bankruptcy, the filing of which petition, being objected to, was refused.

On November 5, 1917, the circuit court pronounced the decree here complained of on appeal, directing the receivers to sell the property of the Davy-Pocahontas Coal Company at private sale on or before December 15, 1917, provided they are able to obtain therefor an offer of $500,000, and if such sale should not be effected by that date they were directed to advertise the property for sale and to sell the same at public auction on or before February 1, 1918, the notice, time, terms and place thereof to be given by publication in the McDowell Recorder for four successive weeks. The Davy-Pocahontas Coal Company, W. L. Taylor and others objected to a sale of the property at that time, and moved the court to require the receivers out of the funds in their hands, totaling about $95,000, to pay off the taxes on the property and the interest then due on the bonds and interest coupons secured by the deeds of trust, which objection and motion were overruled, but the court further decreed that if before the time fixed for said sale the Davy-Pocahontas Coal Company or anyone for it should pay off the amount of the indebtedness of said coal company as set out in the decree, the receivers should not proceed to sell the property.

Of the ten assignments of error, only those deemed material, relevant and necessary to a just decision will be considered in passing upon the merits of the cause, so far as they are now involved.

The failure of the holders of the notes or bonds secured by the deeds executed to the Mercantile Trust & Deposit Company and the Equitable Trust Company, respectively, to produce, prove and file them while the cause was before

the commissioner, and his reporting and the decree fixing them as liens against the property of the grantor, notwithstanding such failure, is the first error assigned by appellants. The bill alleges the due execution of the trust deeds, notes and bonds and the aggregate amount of both, the dates of their issuance and the property on which they are liens, namely, all real and personal property of the Davy-Pocahontas Coal Company, and exhibits copies of both instruments.

The two trust companies file separate answers to the bill setting forth briefly the due execution and objects of the trusts, the dates thereof, the amount of the notes and bonds secured and negotiated. The answer of the former alleges that of the $300,000 of bonds secured by the deed in which it is named trustee $3,000 have been retired as paid and discharged, that the residue remain outstanding and subsisting valid liens against the trust subject, and that the interest coupons due and payable thereon January 1 and July 1, 1915, and 1916, and January 1, 1917, were not paid at the time the answer was filed; and further says that the number of the holders of the bonds authorized by the deed so to do have demanded that it, as the trustee, proceed to foreclose the lien by a sale of the trust property. The answer of the latter details the same facts as to the notes secured by the trust executed to it, and alleges the default of the grantor in the payment of interest as of the dates mentioned in the answer of the Mercantile Trust & Deposit Company.

Notwithstanding the facts alleged in the bill and in the answers of the respondent trustees as to the bonds and notes and the deeds of trust, the Davy-Pocahontas Coal Company does not answer or deny the allegations; it did not appear for any purpose, and the bill was taken as confessed as to it. Nor does the appellant Taylor, though president, creditor and owner of a large block of the capital stock of the Davy-Pocahontas Coal Company, in his answer or in the petition hereinafter referred to, or in any other manner than by exceptions to the reports of commissioner Counts, directly or indirectly question the allegations of the bill with respect to the integrity or validity of the bond issues; and only by a general replication does he deny the allegations of the answers filed by his codefendants, the trustees.

None of the bonds or notes whose payment the trusts secured were produced before the commissioner, nor was the failure to produce them explained, and they were reported by him and decreed by the court as liens in favor of the Mercantile Trust & Deposit Company and Equitable Trust Company; whether properly so or not is a question for solution in the light of the circumstances and of the provisions of the trust deeds. These provisions, it may be said, without reciting them in detail, confer upon the trustees ample power and authority to act as the representatives and agents of the purchasers and holders of the obligations secured, so far as necessary to protect their rights and interests, · however affected, whether by litigation or in any other manner. *Billmyer Lumber Co.* v. *Coal Co.*, 66 W. Va. 696. The power to represent and protect the rights of such holders could not be more complete or effectual. The trusts vested broad and ample authority to act for them and on their behalf in all matters pertaining to them and to the enforcement of their rights arising thereunder.

It is true that as a general rule the notes or bonds secured must be produced, or a sufficient reason given for their nonproduction. *Armstrong, C. & D. Co.* v. *Painter,* 75 W. Va. 394, 399; 3 Jones on Mortgages (7th Ed.), §1469a, and cases cited. But where a bill or answer to foreclose mortgage liens against real estate gives a detailed description of the liens, and the mortgagor does not deny the facts alleged and the liens to be as set forth, it will be taken as true and the bonds treated as valid and outstanding obligations of the debtor; nor in such cases is it necessary to show in whose hands they are or to require their production before the entry of the decree of foreclosure. *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, 193; *Anderson* v. *Culver,* 127 N. Y. 377; 3 Jones on Mortgages (7th Ed.), § 1469a.

The general replication of W. L. Taylor to the answers of the trustees is the only denial of any of the allegations relating to the bonds and notes, and that cannot avail as a denial by the Davy-Pocahontas Coal Company, the mortgagor, who made no denial of either the bill or answers. And, further, it is the general rule in cases involving deeds of trust

securing large numbers of outstanding and widely scattered bonds or notes, and providing for a trustee to represent the holders thereof, that "it is not necessary that each claimant of a bond or of unpaid interest should, at this stage of a foreclosure case, identify himself as the owner of bonds or unpaid coupons. It is not necessary that the bonds with coupons should be produced before a nisi foreclosure decree. It is only necessary that it shall, at this stage of the cause, appear that there has been a default, and the amount of that default. This showing has been made. Should a decree of sale be made absolute, the holders of bonds can then be required to produce their bonds and coupons before a master, and all questions connected with the amount due each, and of ownership, can then be determined. *Guaranty Trust & Safe Deposit Co.* v. *Green Cove Springs & M. R. Co.*, 139 U. S. 150, 151. Such a decree is not to be regarded as final as to the debt entitled to share in the distribution, for any other creditor may challenge the debt when the claims are produced in the master's office for ascertainment and classification. The decree for a foreclosure only establishes that there has been a default in the payment of the last three installments of interest. It does not establish that that interest is due to any particular person." *Central Trust Co.* v. *Cincinnati, H. & D. Ry. Co.*, 169 Fed. 466, 469; *Toler* v. *East Tenn. &c. Ry. Co.*, 67 Fed. 168, 180. Thus it is only on the final decree of distribution that it is necessary for the various holders of the bonds and notes to present and prove them before the receiver or master, as the case may be. The court should not direct the distribution of the proceeds of the sale until it shall be ascertained that the bonds and notes outstanding represent proper and valid liabilities against the debtor, and such as he has authorized to be created.

There arises the next question, whether before decreeing a sale of the trust property it was the duty of the court to ascertain by reference to a commissioner or by an express finding of its own based upon the pleadings and the facts disclosed whether the rents and profits will be sufficient to pay and discharge the lien indebtedness within five years. Such

preliminary investigation and report generally are necessary.   Section 7, ch. 139, Code; *Westinghouse Co.* v. *Ingram,* 79 W. Va. 220, 223-4; *Dunfee* v. *Childs,* 45 W. Va. 155, 164. And when necessary, the burden of proof rests upon the creditor seeking the sale.   *Newlon* v. *Wade,* 43 W. Va. 283. 286.   But if the bill alleges and the respondents do not deny that the rents and profits to accrue from the property will not in five years discharge the liens, an inquiry need not be had.   Section 36, ch. 125, Code; *Newlon* v. *Wade,* cited; *Muse* v. *Friedenwald,* 77 Va. 57; *Ewart* v. *Saunders,* 25 Gratt. 203; *Horton* v. *Bond,* 28 Gratt. 815; *Barr* v. *White,* 30 Gratt. 531.   Despite the failure to deny the allegations of the bill as to their insufficiency, the court directed the commissioner to ascertain that fact, but this the commissioner failed to do in either his first or second report, nor did the Davy-Pocahontas Coal Company or W. L. Taylor except to the reports on that ground, though the latter did except to the first report because of that failure, but immediately withdrew his exception.

While the primary object of the bill in this case is to secure a decree to sell the property of the coal company and appropriate the fund derived therefrom to the payment and discharge of the lien of a judgment recovered by the plaintiff, Abney-Barnes Company, the ultimate object is to enforce the prior trust or mortgage liens created by the judgment debtor, and the plaintiff, to effectuate the attainment of the object he seeks, specifically alleged the probable insufficiency of the rents and profits to discharge all liens within five years.   This broad declaration of the pleading is not denied.   The statement in the answer of W. L. Taylor that he neither admits nor denies these allegations is not such a denial as section 36, ch. 125, Code, contemplates.   To avail, the denial must be specific and positive.   *Grant* v. *Cumberland Valley Cement Co.,* 58 W. Va. 162, 172; *Shurtleff* v. *Right,* 66 W. Va. 582; *Ihrig* v. *Ihrig,* 78 W. Va. 360.   The mere statement in answer that the respondent neither admits nor denies a material fact alleged in the bill does not amount to a denial of the existence of that fact.

And further, in a suit to enforce liens created by trust

deeds given to secure payment of an indebtedness, which provides for a sale for cash in case of default, it is ordinarily not error to decree a sale of the land without ascertaining its rental value. *Lewis, Hubbard & Co.* v. *Toney,* 76 W. Va. 80; *Stafford* v. *Jones,* 73 W. Va. 299, 303-4; *Neff* v. *Wooding,* 83 Va. 432; *Kyger* v. *Sipe,* 89 Va. 507. After the institution of a judgment creditors' suit to enforce liens under section 7, ch. 139, Code, a trust deed creditor who has been made a party to the suit cannot bring an independent suit to foreclose his mortgage, but such mortgage, like any other lien, must be enforced in that proceding. *Stafford* v. *Jones,* 65 W. Va. 567. But the trustee or mortgagee can obtain in such suit the enforcement of his mortgage according to its terms, if his trust deed is prior to the judgment liens, and if not, its proper order or priority will be determined. A mortgagee does not lose any substantive rights by being compelled to enforce his trust lien in a pending suit, and the time and terms of the sale will be determined by the provisions of the trust deed, not by the rules applicable to the enforcement of judgment creditors' liens. *Watterson* v. *Miller,* 42 W. Va. 108; *Stafford* v. *Jones,* 65 W. Va. 567; *Stafford* v. *Jones,* 73 W. Va. 299; *Neff* v. *Wooding,* 83 Va. 432.

The creditors' suit in the circuit court of McDowell County, it is contended, should have been stayed by the judge of that court until the termination of the bankruptcy proceedings against the Davy-Pocahontas Coal Company instituted January 13, 1916, in the federal court for the southern district of West Virginia. It must be observed, however, that this proceeding was begun more than six months after the institution of the creditors' suit in the state court, and under the decisions of the United States Supreme Court and other federal courts the rule recognized is that the court which first obtains rightful jurisdiction over the subject matter in a proceeding *in rem* to enforce prior liens will not be interfered with by any other court, including a court of bankruptcy. *Pickens* v. *Roy,* 187 U. S. 177; *Metcalf* v. *Barker,* 187 U. S. 165; *In re Pilcher & Son,* 228 Fed. 139, 142; *In re Schmidt,* 224 Fed. 814; *Blair* v. *Brailey,* 221 Fed. 1; Collier on Bankruptcy (11th Ed.), pp. 293, 294, notes 57 and 59;

1 Fed. Stat. Ann. (2nd Ed.), pp. 635-6. This holding does nothing more than reaffirm and approve the general, if not the universal, rule that concedes to the court which first regularly and lawfully acquires jurisdiction of the subject matter and of the parties interested the right to proceed undisturbed to the final determination of the controversy involved. *Whan* v. *Hope Natural Gas Co.*, 81 W. Va. 338. It is unnecessary to determine what the result would have been with respect to the granting of a stay, if the bankruptcy proceeding had been instituted within four months after the beginning of the actions which resulted in the judgment liens sued on in the creditors' suit, or what it would have been had the proceeding in McDowell County been one *in personam* instead of *in rem.*

The sixth, seventh and eighth assignments relate to and comprehend the same general subject, namely, the refusal to allow the motion of the defendants, now appellants, to apply the $95,000 under the control of the court to the payment of the overdue and unpaid interest coupons attached to the bonds and notes, and thereby remove the default relied on by the defendant trustees acting for and on behalf of the holders and owners of the bonds and notes. This fund was accumulated through the administration and management of the coal mining operations on the trust estate or property by receivers appointed by the court upon the petition and motion of the appellant Taylor.

The third and final report of the receivers, the only report appearing in the record, shows $95,000 as the net receipts for the first six months of the year 1917 from all sources after deducting disbursements, which include taxes on the property, administration expenses, insurance, repairs and compensation to the receivers. Except for the intervention of some unusual or extraordinary 'cause or circumstance, a property from which is produced during six months the net sum realized may not improperly be assumed to be valuable and profitable, a property likely to produce under the same or an improved management a return upon the investment such as will speedily absolve it from encumbrances, and, when so disencumbered, yield a profit to its owners. But

whether the returns be sufficient to pay the indebtedness against the property within five years or not, a proposition affirmed by appellants and denied by appellees, is not controlling or decisive upon the question discussed.

An owner who is about to be deprived of his property to satisfy liens, however created, has the clear right to know within a reasonable degree of certainty its status as to the charges for which it is to be sold. The fund in the treasury of the court and under its control arose out of the trust property and is a part of it, and as such is subject to the payment of the liens binding it. Though predicated upon facts somewhat different, the principle enunciated in *Strayer* v. *Long,* 83 Va. 715, pt. 2, syl., is not inapplicable, though appellees deny its applicability. That is, that all sums in the hands of receivers realized from property of the debtor should, before subjecting it to sale, be applied as credits on his indebtedness, that he may know to what extent it remains a charge against his land. Such a requirement conforms to principles governing courts of equity. To hold this fund in reserve for purposes merely conjectural and that may not occur is not consonant with justice and equity. The statement of the proposition shows its harshness. The receivers continue to manage the property; the court refuses to discharge them upon appellees' motion; the fund in their hands when the decree was entered the receivers doubtless have since increased at the same rate, perhaps more than quadrupled it, and to that extent exhausted the property, while interest has proportionately augmented the indebtedness without the equivalent compensatory reduction of the trust liens. Because of the receivership, the debtor does not have access to the property. He cannot control it; cannot deal with it, sell or encumber it to relieve it from encumbrances, and the court and the receivers are converting it into liquid assets without applying the returns to his relief. His request for their appointment does not meet the situation or prejudice his rights.

Moreover, the application of the fund so produced from the property to the payment of the overdue interest coupons would have partially, perhaps totally, absolved it from that default. Such, it is true, was within the sound discretion of

the court; but as the interest was in effect the primary liability of the debtor, and as such together with the principal the first charge upon the land, it seems inequitable under the circumstances to hold the fund subject to some preconceived situation demanding its expenditure.

This application reasonably falls within the rule requiring certainty in the ascertainment of liens for which the encumbered land is liable before decreeing it to be sold for their satisfaction. *Payne* v. *Webb,* 23 W. Va. 558; *Carter* v. *Carter,* 83 W. Va. 312, 98 S. E. 296, contemporaneously decided. Such course is to be commended because of the probability of discouraging bidding by creditors as they probably would bid if the amounts of the liens were fixed definitely by the decree. The same principle or necessity is recognized and the rule enforced in *Golden* v. *O'Connell,* 69 W. Va. 374, where some of the lienors agreed to a sale of part of the tract subject to their lien to be divided into lots and sold, the proceeds to be applied to discharge the liens; and the court held it necessary to make such an application before decreeing the sale of the other part of the land.

The failure to give a day to redeem before sale is the next assignment to be noted. As a general rule, according to many decisions of this court, a decree to sell land for debt without giving the debtor reasonable time for payment before sale is cause for reversal. *King* v. *Burdett,* 44 W. Va. 561; 8 Enc. Dig. Va. & W. Va. Rep. 693. The giving of time for advertising the sale is not the equivalent of a specific day to redeem. *Rose* v. *Brown,* 11 W. Va. 122. Though somewhat archaic, the rule is too well established in this state to be disturbed or ignored in some circumstances. However, it is held not to apply to decrees directing a trustee to sell land conveyed to him to secure the payment of the grantor's debts, where the deed fixes the terms and conditions of the sale. *Watterson* v. *Miller,* 42 W. Va. 108. See also *Stafford* v. *Jones,* 73 W. Va. 299, 303-4. In the former case Judge BRANNON says: "That is a technical rule which requires a court to give a day to redeem before sale, in addition to the time required for notice of sale. It ought not to be applied to sales under trust deeds, as a trust deed is essentially a

contract, * * * and the court has not right to give indulgence when the parties have provided against it.'' So in this case, if the court had decreed a sale at public auction upon the notice and in the manner required by the trust deed, it would not have been necessary to fix a day to redeem, as the decree would merely have enforced the provisions of the contract. But the court went further and authorized a private sale to be conducted by the receivers, and directed a public sale to be had upon four weeks' published notice only in case a private sale could not be effected in the time allowed. Since the court authorized a sale by private negotiation to be conducted through the receivers, which under the terms of the decree could have been made immediately upon its entry, a reasonable time and opportunity to redeem the land ought to have been accorded the debtor before such sale could be consummated and his rights irretrievably jeopardized.

Finally, appellants complain of the advertisement directed by the court in the decree of sale, in that the direction failed to follow the requirement of the trust deeds, which, we think, should have been done as part of the contract of the parties. For this reason, and because of the failure to apply the funds in the hands of the receivers to the partial relief of the debtors and exoneration of their property from encumbrance, and the lack of a definite ascertainment of the exact amount due on the total indebtedness binding the property, we are of opinion to reverse the decree, award costs to appellants, and remand the cause for further proceedings.

*Reversed and remanded.....*