# CHARLESTON.

CARTER, ADMR. v. CARTER *et als.*

Submitted January 28, 1919.    Decided February 4, 1919.

EXECUTORS AND ADMINISTRATORS—*Sale of Land—Adjudication of Priorities of Liens.*

Where a purchaser of lands takes a deed therefor and immediately executes a trust deed thereon to secure the unpaid purchase money and dies, and, on default of payment, the trustee advertises the property for sale, but before the day of sale the administrator of the purchaser files a general creditors bill making the vendor and his trustee parties, it is error for the court, or the judge in vacation, to authorize the trustee to make sale of the property and bring the funds into court, before the amount of the 'debts and priorities of liens have been adjudicated.

Appeal from Circuit Court, Mercer County.

Creditor's suit by Garland R. Carter, Administrator of E. E. Carter, against Mary F. Carter and others. Decree for defendants granted, and plaintiff appeals.

*Reversed and remanded.*

*Sanders, Crockett & Kee,* for appellant.

*Wm. E. Ross* and *James S. Kahle,* for appellees.

WILLIAMS, JUDGE:

This is a creditors suit by Garland R. Carter, administrator of E. E. Carter, deceased, against his heirs and creditors,

for the purpose of ascertaining his debts and their priorities and selling the lands of his estate, on the ground that the personal assets are not sufficient to pay the same.

At the time said E. E. Carter died he owed a debt of $26,000.00 to Cleo S. Garret and Robert M. Garrett, her husband, as well as numerous other debts to other persons. This debt to the Garretts was for the balance of purchase money on certain lots in Bluefield, which said Carter had purchased from them in his lifetime and partly paid for, and was secured by a deed of trust executed on said lots by his widow and heirs at law in fulfillment of his contract of purchase, the interest of his infant heirs therein being conveyed by a commissioner appointed by the court for the purpose pursuant to a decree made in a suit brought for the specific performance of the contract. An absolute deed was contemporaneously executed by the Garretts to the Carter heirs for the same lots. $20,000.00 of said debt was represented by four notes of $5,000.00 each, becoming due and payable in one, two, three and four years, respectively, from the 14th of March, 1917, and $6,000.00 thereof, not evidenced by any note, represented the balance of $7,000.00 to be paid in lieu of a lot which said Carter had agreed to convey to the Garretts, as part of the consideration for the lots sold to him, $1,000.00 of which they paid. After the death of Carter this conveyance was found to be impracticable, because of the numerous liens on said lot and the consequent inability of the Carter heirs to make a good and unincumbered title thereto. Said $6,000.00 was made payable in monthly installments of $500.00 each, with interest, the first installment being payable on the 1st of November, 1917. The trust deed stipulated that default in payment of any one of the $5,000.00 notes should operate to cause all of them to become due and payable for the purpose of authorizing the trustee to sell, and also that default in the payment of five of the $500.00 monthly installments should cause the whole of the said $6,000.00 to become due and payable; and upon default in either respect, the trustee was authorized, on request of Cleo S. Garrett or her assignee of the debt, to sell the property at public auction for cash, sufficient to pay

the costs of sale and all the notes and installments then matured, and the balance on such terms as to meet and discharge the remaining notes and installments as they became due, first having advertised notice of such sale in some newspaper of general circulation published in Mercer County.

Default having been made in the payment of one of the notes and six of the monthly installments, William E. Ross, the trustee in said trust ·deed, advertised that on the 18th day of May, 1918, he would offer the property for sale at public auction. On the 16th of May, two days before the sale day, plaintiff presented to the judge of the circuit court, in term time, his bill praying, among other things, that the trustee be enjoined from selling. A temporary injunction was awarded inhibiting the sale, and the cause was remanded to rules to be there matured. At a later day of the same term, to-wit, on the 22nd of May, the trustee and the Garretts, having given notice thereof, appeared before the judge, tendered and asked leave to file their joint answer and moved for a dissolution of the injunction. Plaintiff appeared and objected to their answer being filed at that time, on the ground that the cause was pending at rules, not matured for hearing and was not on the docket. He also objected to the entry of an order at that time, adjudicating any of the principles of the cause. The judge overruled his objections to the filing of the answer and permitted it to be filed, and states in his order that it is not considered as an answer to the bill at that time, but only as an affidavit in support of the motion to dissolve the injunction. He thereupon entered an order reciting the fact that the trust deed was given to secure the purchase money due the Garretts on the lots advertised for sale, sustained defendants' motion and dissolved the injunction and directed the trustee to proceed to sell the property according to the terms stated in the notice of sale, requiring him, before proceeding, to execute before the clerk of the court a good and sufficient bond in the penalty of $25,500.00, conditioned for his faithful performance of the trust, and directed him to bring the fund into court to be thereafter disbursed according to its order.

The question presented by this appeal is, was it error to

dissolve the injunction and permit the trustee to sell the property out of court, after a general creditors suit had been brought making the trustee and the *cestui qui trust* parties and before the cause was matured for a hearing?

The bill alleges that E. E. Carter, at the time of his death, owed a large number of debts besides the trust debt to the Garretts, and that some of those debts were evidenced by judgments and others by notes and open accounts. This court and the court of appeals of Virginia have held in numerous cases that it is premature and erroneous to decree a sale of land to satisfy a lien, without first ascertaining all the liens thereon and fixing their amounts and priorities. 8 Ency. Dig. Va. & W. Va. Cases, 674. Although the cases there cited are mostly judgment creditors suits, the rule is the same in the case of a general creditors suit brought for the purpose of selling real estate and paying the debts of a decedent. The reason for the rule is, that the creditors, even though they be junior creditors, have a right to have their liens adjudicated and their priorities determined in order that they may be the better prepared to protect their interests at the bidding. The creditors in such case are usually bidders at the sale, and a creditor, ignorant of the relation his lien bears to other liens on the same property, might be deterred from bidding. The debtor himself is also vitally interested in having the property bring the best price obtainable, and therefore a right to have any uncertainty respecting the liens determined before a sale is made. *Payne* v. *Webb*, 23 W. Va. 558.

The fact that defendants' lien is for the purchase money of the lots to be sold does not affect the application of the rule, the same reason for the rule applies.

Although the judge was presiding in court when he awarded the injunction, and also when he permitted defendants to file their answer, and sustained their motion to dissolve the injunction and authorized the trustee to make the sale, nevertheless his rulings in this respect had no more force than if made in vacation. The cause was not then in condition for an adjudication upon any question touching the merits. The general creditors suit having been brought

making the trustee and *cestui qui trust* parties, before the day of sale, the trustee, of course, could not disregard the suit and proceed with the sale, he had to wait the orders of the court. The judge, at that time, could only act upon the injunction, either to modify or dissolve it or to refuse to dissolve it; he could not adjudicate any question relating to the merits of the case. This case is very similar to *Stafford* v. *Jones,* 65 W. Va. 567, and is governed by the principles therein announced, and also in *Parsons* v. *Snider,* 42 W. Va. 517 and *Payne* v. *Webb, supra.*

We reverse the decree and remand the cause for further proceedings.                    *Reversed and remanded.*