CLETUS SITES, *Admr., Etc. v.* VIRGINIA SITES *et al.*

(No. 9293)

Submitted September 8, 1942. Decided December 8, 1942.

*Paul J. Hartman*, for appellant.
*M. S. Hodges,* for appellees.

Fox, PRESIDENT:

Virginia Sites, Blanche Sites, Mernie Sites and Ralph Sites, infants, by H. G. Muntzing, their guardian ad litem, complain of a decree of the Circuit Court of Pendleton County, entered on the 5th day of September, 1941, by which their interest in a tract of 234 acres of land, of which their mother, Bessie Sites, died seized, was decreed to sale to cover a decree against the estate of Bessie Sites, entered in the chancery cause of Cletus Sites, administrator of the estate of Snowden Sites, deceased, against Virginia Sites and others. Consideration of the questions raised on the appeal before us requires a somewhat extended statement of the events leading to the entry of the decree complained of.

On December 29, 1919, S. D. Miller conveyed to Snowden Sites and Bessie Sites, Miller's daughter, a tract of 234 acres of land in Pendleton County, for the consideration of $1800.00. Miller allowed his daughter a credit of $500.00 on the purchase price, and she afterwards paid an additional $750.00 thereon. On December 1, 1927, Snowden Sites borrowed $1,000.00 from the Stockman's Bank of Harman, and he and his wife, Bessie Sites, executed their note therefor, and M. L. Raines, W. P. Sites and Elias Sites indorsed said note, and the same was indorsed by J. V. Harman, as guarantor. The proceeds of the note were deposited in the Stockman's Bank to the credit of Snowden Sites, and on December 7, 1927, he paid to S. D. Miller $538.00, which appears to have been in settlement of the balance due on the 234 acres of land, Miller having apparently given a further credit on the purchase of said land. The $1,000.00 note aforesaid was

renewed with the same makers, indorsers and guarantor on December 1, 1928, and December 1, 1929. Before the maturity of the last note, Bessie Sites died, and on December 1, 1930, and again on December 1, 1931, the obligation represented by said note was renewed by Snowden Sites with the same indorsers and guarantor, the estate of Bessie Sites not being in any wise connected with said renewals. The record does not show whether the notes on which the signature of Bessie Sites appeared were retained by the bank or surrendered when the renewals aforesaid were permitted. Snowden Sites died April 29, 1932, and before the maturity of the last renewal of said note, and Cletus Sites qualified as administrator of his estate. On March 21, 1933, the Stockman's Bank of Harman recovered a judgment on said note for the sum of $1,019.98, and $19.10 costs, against Cletus Sites, administrator of Snowden Sites, deceased, Nola Sites, administratrix of the estate of Elias Sites, deceased, W. P. Sites, M. L. Raines, and against J. V. Harman, as guarantor. No administrator had then been appointed for the estate of Bessie Sites. A suit in equity was then instituted by Cletus Sites, administrator of the estate of Snowden Sites, deceased, against Virginia Sites, Blanche Sites, Mernie Sites and Ralph Sites, infant children and heirs at law of the decedent, and others, including the Stockman's Bank of Harman, but not including the indorsers and guarantor on the $1,000.00 note aforesaid. The purpose of this suit was to convene the creditors of Snowden Sites, deceased, and for a general settlement of his estate, including an ascertainment of his personal estate, the debts and liabilities of the decedent, the amount and value of the real estate, and for general relief. The estate of Bessie Sites was at that time in no wise involved in the suit, and while the infant children of Snowden Sites and Bessie Sites were made parties, they were proceeded against as heirs at law of Snowden Sites alone. This suit was referred to a commissioner in chancery, who thereafter filed a report, which does not appear in the record, and on December 4, 1935, the cause was heard upon former proceedings, and upon the report of the commissioner, and

the amount of the personal estate in the hands of the administrator was ascertained, and the same directed to be applied pro rata on all of the sums decreed against Snowden Sites' estate, among which was the sum of $1,000.00 due to the Stockman's Bank of Harman, which, presumably, covered the note hereinbefore mentioned. By said decree, the one-half interest of Snowden Sites in the 234 acres of land, together with other lands, were decreed to be sold by a special commissioner. On February 8, 1936, the one-half interest of Snowden Sites in the 234 acres of land was sold for the sum of $760.00, and the sale confirmed on February 10th, following. On the same day, and before confirmation of said sale, the Stockman's Bank of Harman, M. L. Raines, W. P. Sites, Nola Sites, administratrix of Elias Sites, deceased, and J. V. Harman filed their petition in said cause in which they averred that the recovery of the judgment aforesaid in favor of the Stockman's Bank against them and Cletus Sites, administrator of Snowden Sites, deceased, was based upon a note to the said bank for $1,000.00, the original of which was signed by Snowden Sites and Bessie Sites, as makers, with Elias Sites, then deceased, W. P. Sites, W. L. Raines, as "securities", and J. V. Harman, as guarantor; that the said note was executed for the purpose of securing money to pay the balance of the purchase price due to Scott D. Miller on the tract of 234 acres of land aforesaid, and procured the signatures of the petitioners, other than the bank, to said note, on the statement that said money was to be so used; that the entire amount of said note was decreed against the estate of Snowden Sites, and that it would be inequitable to require his estate to pay the whole amount thereof, and relieve the interest of Bessie Sites' estate therein from making any contribution to the payment of said purchase money. They, therefore, asked that the infant heirs at law of Snowden Sites and Bessie Sites be made defendants to the petition, and that the judgment of the Stockman's Bank of Harman be decreed to be a lien on the whole of the 234 acres of land, and that the undivided one-half interest therein, remaining unsold, be sold to satisfy said judgment. Upon the

filing of this petition, the cause was again referred to the same commissioner in chancery, but the record fails to show any report by him. The infant defendants appeared by their guardian ad litem and interposed their demurrer to the petition on the ground that it attempted to set up (1) a new cause of action aside and apart from the chancery cause in which the same was filed; (2) because the note upon which the petitioners contend that Bessie Sites was obligated was merged into the renewal note after her death, and later merged into the judgment recovered on said note, and her estate released therefrom; and (3) there had been no personal representative appointed for the estate of Bessie Sites, deceased. It does not appear that this demurrer was ever passed on, and on December 28, 1938, an amended petition was filed setting up the appointment of an administrator for the estate of Bessie Sites, deceased, and to this amended petition, the infant defendants, by their guardian ad litem, interposed their demurrer on substantially the same grounds as those mentioned above. This demurrer was overruled on August 29, 1939, and thereafter an answer to the amended petition was filed by the infant defendants, on September 16, 1939, in which their infancy is averred and the court is asked to protect their interests. In this answer, it is denied that Bessie Sites is liable for any part of the $1,000.00 note aforesaid, and it is averred that Bessie Sites, the mother of the infant defendants, had paid $1250.00 on account of the purchase price of the 234 acres of land, and that no equitable lien arose against their one-half interest therein; and they further averred that only $535.00 of the $1,000.00 which Snowden Sites borrowed from the Stockman's Bank of Harman had been used by him in the payment of the purchase money on the land aforesaid. There was an agreed statement of facts filed in the cause, and upon the pleadings and the agreed statement of facts, the court entered a decree, from which we quote:

"* * * it is therefore adjudged, ordered and decreed that said plaintiffs (petitioners) do re-

cover of and from the estate of Bessie Sites the sum of $1042.20, which is the amount with interest and costs, of the judgment set up by plaintiffs in said petition, less a credit on the same of $505.00 as of February 8, 1940 (erroneously stated in said agreed statement of facts as $336.67), paid by Special Commissioner William McCoy in this suit, as the full amount to be disbursed on said judgment from the funds arising from the estate of Snowden Sites, and this recovery is established as the first and only lien against the interest of the said Bessie Sites in the tract of 234 acres of land owned by her and said Snowden Sites at the time of her death, the said interest being the one-half undivided interest therein, the other one-half undivided interest having been sold herein by said Special Commissioner McCoy. It is further adjudged, ordered and decreed that unless the defendants or some one for them shall, within 60 days from the rising of this court, pay off and settle said recovery, then M. S. Hodges and H. G. Muntzing, who are hereby appointed special commissioners for the purpose, shall proceed to sell the said one-half undivided interest in said tract of 234 acres, formerly owned by Bessie Sites, at the front door of the court house in Franklin, * * *."

The decree contains a provision with respect to advertising, notice and terms of the sale, and directs that the proceeds of the sale be deposited to the credit of the cause in a designated bank. From this decree, at the instance of the infant defendants, this Court granted an appeal.

The record does not cover many points necessary to be established in order to sustain the proceedings under which the decree complained of was entered. Any liability on the part of the estate of Bessie Sites for the $1,000.00 note in question must be based upon her signature thereto. After her death, the note was renewed by Snowden Sites with the indorsers and guarantor who signed the note on which the name of Bessie Sites appeared, and the record is silent as to whether this renewal was accepted in payment, or whether it was in-

tended to hold her estate liable therefor. Whether or not her estate remained liable on this obligation depends upon the circumstances, and there is nothing in the record, in the form of allegation, proof, or otherwise, from which we can determine the existence or non-existence of such liability. The Stockman's Bank of Harman instituted its action at law on the renewal note, and until the filing of the petition in this cause, made no claim whatever against the estate of Bessie Sites. It could, at any time after the expiration of three months from the death of Bessie Sites, have had an administrator appointed for her estate, and after the expiration of six months therefrom, or even earlier (*Hess* v. *Casto,* 120 W. Va. 158, 197 S. E. 292), could have instituted a suit against her administrator and heirs at law to enforce the payment of its note. It did not do so, and the surmise that it did not then consider it had a claim against the estate of Bessie Sites is justified. Only after the estate of Snowden Sites had been exhausted, and a part of the note in question remained unpaid, did it join with the indorsers and guarantor, by petition in this cause, in seeking to make the estate of Bessie Sites liable therefor.

This suit, which was originally one for the sole purpose of securing a settlement of the estate of Snowden Sites, and, if necessary, to subject to sale the real estate of which he died seized, was instituted under the provisions of Code, 44-8-7. It was regularly proceeded with to the point where there was a decree for the sale, and a sale, of the Snowden Sites real estate. The purpose for which the suit had been instituted was substantially served, and only then was it sought, by way of petition, to institute what amounted to an entirely new proceeding, for the purpose of bringing into the case an entirely different estate from that covered by the original bill. We do not think this proceeding was germane to the purposes of the original bill, as the same were set up therein. It may be that, in the first instance, when the plaintiff, as administrator of Snowden Sites, filed his bill, he could have secured the appointment of an administrator for the estate of Bessie Sites, brought him into the suit, as well as

the heirs at law of Bessie Sites, and sought a settlement of her estate, and the subjection of her real estate to sale, in order to relieve the Snowden Sites estate of the entire burden of the note for which Snowden Sites and Bessie Sites were originally jointly liable. Had that been done, there would have been a necessity for the convention of Bessie Sites' creditors, and in that suit, the question of her liability for any part of this note, as well as other indebtedness, might have been determined. This, however, was not done. Plaintiff's suit was solely for the purpose of settling the estate of Snowden Sites, and after that purpose had been accomplished, the office of that suit ended, and a new suit could not be ingrafted thereon.

Under Code, 44-8-7, we think it clear that the only way by which the real estate of a decedent can be sold is in a suit for that purpose, instituted by the personal representative of the decedent, or by a creditor. When such a suit is instituted there must be a convention of the creditors in the manner prescribed by statute, and an opportunity given them to present their claims. Until this procedure has been followed, there can be no proper decree for the sale of real estate, and even where it is alleged that the personal estate is insufficient to pay the debts, this can only be determined by a settlement of the personal estate, or a showing of the absence of such estate. Whether Bessie Sites possessed any personal estate at the time of her death, we do not know, and the record throws no light on this question. Notwithstanding this, the decree complained of finds that the amount claimed to be due to the Stockman's Bank of Harman is the sole lien upon her real estate, and its sale is decreed, wholly ignoring the possible rights of other creditors.

We think, therefore, that the decree complained of is erroneous in two respects: (1) in the circumstances, the petition on which it was entered was not germane to the purposes sought to be accomplished by the plaintiff's bill; and (2) it was entered without a convention of the creditors of Bessie Sites, deceased, as the Code plainly requires. It follows that the decree will be reversed and set aside,

and the petition of the Stockman's Bank of Harman and others dismissed, without prejudice to their right to institute any proper suit or proceeding to subject the estate of Bessie Sites to the payment of their claims.

*Reversed; petition dismissed.*