POLLY ADKINS, *et al.*

v.

FRENCH ADKINS, *et al.*

(No. 10786)

Submitted January 9, 1957. Decided April 9, 1957.

*J. Floyd Harrison,* for appellants.

*Milton J. Ferguson, Charles W. Ferguson, III, Philip A. Baer,* for appellees.

HAYMOND, JUDGE:

This is a suit in equity instituted in the Circuit Court of Wayne County on October 4, 1954, in which the plaintiffs Polly Adkins and Homer Adkins, her husband, Vernon Bradshaw and Mae Bradshaw, his wife, Dolliver Bradshaw and Mary Bradshaw, his wife, Helen Blankenship and Floyd Blankenship, her husband, Jewell Blankenship and Albert Blankenship, her husband, and Ella Gilkerson seek a decree to cancel and set aside a deed dated July 30, 1942, made by W. Earl Burgess, Special Commissioner, to the defendants French Adkins and Nora Adkins for a tract of sixty acres of land in Wayne

County, West Virginia, which the plaintiffs contend is a cloud upon their title to the land, and to require the defendants to account for the rents, issues and profits which have accrued to the defendants during the period of their possession of the foregoing tract of land.

The plaintiffs Polly Adkins, Vernon Bradshaw, Dolliver Bradshaw, Helen Ruth Blankenship and Jewell Blankenship, all of whom were over the age of twenty one years when this suit was instituted, are children and heirs at law, and the plaintiff Ella Gilkerson is the widow, of Bryan Bradshaw, who died intestate in 1934, and as such claim to be the owners of the land by virtue of a deed dated September 4, 1933, made to Bryan Bradshaw by Joe Bradshaw, Sr., and Vada Bradshaw, his wife, both of whom also died before the institution of this suit.

To the bill of complaint of the plaintiffs the defendants filed a demurrer, a special plea of the statute of limitations, and an answer in which they denied the material allegations of the bill of complaint. The demurrer was overruled, the special plea was rejected, and the case was heard by the circuit court upon the bill of complaint, the answer, and the testimony of witnesses produced in behalf of the respective parties. By final decree dated April 19, 1955, but apparently entered of record April 20, 1955, the circuit court set aside as null and void the deed dated July 30, 1942, for the sixty acres of land made by W. Earl Burgess, Special Commissioner, to the defendants, rendered judgment against the plaintiffs in favor of the defendants for taxes and costs in another proceeding paid by the defendants aggregating $195.00, which was declared to be a lien against the tract of sixty acres of land, and also rendered judgment that the respective parties pay the costs expended by each of them.

On April 20, 1955, after the court had announced its decision, but apparently before the entry of the foregoing final decree, by a separate decree, the court refused to permit the defendants to file a petition for an allowance

for improvements of the value of $2,500.00 alleged to have been made by them in good faith upon the land during the period of time they occupied it and for a suspension of the execution of the final decree until the amount of the improvements to which they were entitled should be assessed by a jury.

From the final decree cancelling the deed of July 30, 1942, made by W. Earl Burgess, Special Commissioner, to the defendants this Court granted this appeal and supersedeas upon the petition of the defendants.

Prior to September 4, 1933, Joe Bradshaw, Sr., owned in fee simple the land involved in this suit. By deed of that date, which was introduced in evidence, Joe Bradshaw, Sr., and Vada Bradshaw, his wife, conveyed the tract of sixty acres of land to Bryan Bradshaw. The consideration stated in the deed was $700.00, of which $150.00 was paid in cash, and $500.00 owed to a farm loan company and $50.00 owed to a designated person were to be paid by the grantee Bryan Bradshaw. The deed contained a reservation of a life estate in each of the grantors who continued to live on the property until each of them died. Joe Bradshaw, Sr., died October 6, 1953 and Vada Bradshaw died in 1941 or 1942.

It appears that Bryan Bradshaw who died intestate February 28, 1934, did not pay the unpaid purchase money of $500.00 due on the farm loan, that this indebtedness was paid by Nancy Bradshaw, the wife of Joe Bradshaw, Jr., a nephew of Joe Bradshaw, Sr., in October 1939, and that Joe Bradshaw, Sr., repaid that amount to her in December 1939. On December 4, 1940, Joe Bradshaw, Sr., obtained a judgment in the Circuit Court of Wayne County, West Virginia, against E. D. Bunn, Sheriff of Wayne County, Administrator of the Estate of Bryan Bradshaw, in the principal sum of $792.-00 with interest and $15.00 costs.

In October 1941, Joe Bradshaw, Sr., instituted a suit in equity in the Circuit Court of Wayne County against "E. D. Bunn, Sheriff of Wayne County, West Virginia,

Administrator of the Estate of Bryan Bradshaw, deceased; E. D. Bunn, Sheriff of Wayne County, West Virginia, Guardian of the infant defendants, namely, Dolliver Bradshaw, aged fifteen years; Polly, aged ten years; Helen Ruth, aged eleven years; Vernon, aged seventeen years; Jewell, aged eight years; Ella Gilkerson and Mack Gilkerson, her husband." The summons was returnable at November Rules 1941 and was personally served upon Bunn as Guardian, Bunn as Administrator, and Ella Gilkerson and Mack Gilkerson, on October 29, 1941.

The bill of complaint, which was not introduced in evidence, was filed October 23, 1941. By decree entered November 24, 1941, during the Regular November Term, 1941, of the Circuit Court of Wayne County, Jess Hammock was appointed guardian ad litem for the infant defendants and as such filed answers in their behalf. These answers bear the notation that they were filed October 23, 1941, and they were verified December 2, 1941. On December 10, 1941, a decree of sale was entered in the case. The contents of the decree were introduced in evidence and the decree contains this language:

"This day this cause came on to be heard upon the bill and its exhibits regularly filed at rules, upon decree nisi thereon and upon service had upon the defendants; upon the joint and several answers and separate answers of the infant defendants by Jess Hammock, their Guardian Ad Litem; upon the former orders and decrees made and entered herein; upon the judgment heretofore entered and recorded against the defendants in this cause; upon the evidence taken in open court in the presence of the Guardian Ad Litem, the guardian and others on behalf of the plaintiff and in support of his bill. From all of which it doth appear that the plaintiff is entitled to the relief prayed for in his said bill. It is, therefore, adjudged, ordered and decreed that the tract of land set out and described in said bill and in the deed accompanying said bill, be sold in satisfaction of the judgment lien held by the plaintiff or so much thereof as is necessary

to pay off and discharge the costs of this action and the judgment set out in the bill, and for the purpose of making said sale, W. Earl Burgess is hereby appointed as Special Commissioner, who shall advertise the time, terms and place of sale in the Wayne County News, for the requisite time, and sell the same at the East front door of the court house, for cash in hand on day of sale; and from the proceeds so received, he shall pay off and discharge the costs of this action and then, discharge the amount due to the plaintiff, together with the interest and cost thereon, and should monies remain in his hands from said sale, he shall pay the same, over, in proportion to the defendants and those entitled thereto, according to their respective interests, but before making such sale, the said Special Commissioner shall enter into bond in the penalty of One Thousand ($1,000.-00) Dollars, before the Clerk of this Court conditioned for the faithful discharge of his duties and distribution of the monies that may come into his hands.

"It is further adjudged, ordered and decreed, that there be taxed a statute fee of Twenty ($20.00) Dollars and a Guardian Ad Litem of Ten ($10.00) Dollars, as a part of the costs in this cause, and what the said Special Commissioner shall do hereunder, he shall report to a succeeding term of this court, until which time this case is continued."

The deed made by the special commissioner to the defendants, dated, executed, and acknowledged July 30, 1942, and recorded August 28, 1942, in Deed Book 210, page 381, in the office of the county clerk of Wayne County, omitting the description of the property conveyed which counsel agree is the land involved in this litigation, contains these provisions:

"This deed made this 30 day of July, 1942, by and between W. Earl Burgess, Special Commissioner, party of the first part, and French Adkins and Nora Adkins, his wife, parties of the second part, all of the County of Wayne and the State of West Virginia.

"Witnesseth: Whereas, the party of the first part was appointed Special Commissioner to advertise and sell the real estate hereinafter described, by a decree of the Circuit Court of Wayne County, West Virginia, made and entered on the 10th day of December, 1941, to the highest bidder for the same at said sale, in that certain Chancery Cause therein pending, styled, Joe Bradshaw, Sr., vs. E. D. Bunn, Sheriff, etc., which is of record in the Office of the Clerk of the Circuit Court of Wayne County, West Virginia, in Chancery Order Book 34, at page 255, and,

"Whereas, pursuant to said decree, the undersigned Special Commissioner did advertise said property for sale, as required by said decree, and exposed the same for sale, as set out in said decree, on the 9th day of May, 1942, at which sale Joe Bradshaw, Sr., as the announced agent of the parties of the second part herein, placed the highest and best bid for the property, and the property was sold to the parties of the second part, through the agency of Joe Bradshaw, Sr., and,

"Whereas, the said Joe Bradshaw, Sr., directed that deed be made to the parties of the second part herein, because of the agency existing between him and the parties of the second part herein, and the purchase price having been paid in the amount of Eight Hundred and Eighty-seven Dollars and Fifteen Cents, ($887.15), the party of the first part, by virtue of the authority vested in him by the decree made and entered in the cause above referred to, has this day bargained and sold, and by these presents does grant and convey unto the parties of the second part all that certain piece, parcel or tract of land lying and being in Union District, Wayne County, West Virginia, and more particularly on the waters of Miller's Fork, which is more particularly bounded and described as follows, to-wit:—* * *.

"The party of the first part warrants unto the parties of the second part, that by virtue of the authority vested in him by the said orders and decrees in the above styled Chancery Cause set out and described, he has a right to convey the title to said lands unto the parties of the

second part, their heirs, executors, administrators and assigns forever.

"In Witness Whereof, the party of the first part has hereunto set his hand and seal this the 30 day of July, 1942. W. Earl Burgess, Special Commissioner."

The clerk of the circuit court testified that he had examined the original papers in that suit and the records in his office, that he found no papers filed in this case other than the precipe, the summons, the answers of the guardian ad litem, and no decrees other than the decrees of November 24, 1941, and December 10, 1941, and that to his knowledge there was no order recorded or entered in the suit after the entry of the decree of sale and no report of sale by the special commissioner was filed. The evidence indicates clearly that no decree confirming the sale was entered in the case. The bill of complaint was not produced, its contents were not introduced in evidence, and apparently it has been lost or destroyed.

After the deed by the special commissioner was delivered to the defendants they and Joe Bradshaw, Sr., and his wife occupied the premises together until the Bradshaws died and the defendants were in possession of the property when this suit was instituted. The defendants testified that they made improvments on the land consisting principally of fences, repairs and additions to the barn and the dwelling house, a well, gas and water service lines and electrical equipment, and that they had planted some flowers and shrubs and had cleared and farmed some of the land. Neither defendant placed any definite value on any of the various improvements except the cost of $250.00 for the electrical equipment and a net cost of $30.00 for the water line but the defendant Nora Adkins estimated that the defendants had spent between $2,000.00 and $2,300.00 on the property.

The defendant French Adkins testified that the market value of the property in 1945, after the defendants, at the instance of Joe Bradshaw, Sr., had conveyed in De-

cember of that year thirty acres of the sixty acre tract, which in fact contained about ninety one acres, to the heirs at law of Bryan Bradshaw, deceased, was $1,500.00, and that the market value of the remaining sixty acres, when he testified in March 1955, was $3,500.00. He also testified that he and Joe Bradshaw, Sr., together had worked the land and made the improvements; that the only money he had paid for the property was the costs of the suit in which it was sold amounting to $95.00; that he had paid taxes amounting to approximately $194.07; and that he had received during the year before the institution of this suit $600.00 from tobacco produced on the land. In rebuttal one of the plaintiffs, who was familiar with the land, estimated the cost of all improvements made on the property by the defendants to be approximately $250.00.

By their assignments of error the defendants seek reversal of the final decree on these grounds: (1) This suit is a collateral attack upon a judgment entered by the circuit court in another suit in which the court had jurisdiction of the subject matter and the parties, and (2) the defendants were entitled to file their petition for allowance for improvements made by them on the tract of land of sixty acres and to a recovery for such improvements.

The controlling question presented by the assignments of error is whether the decree of sale entered December 10, 1941, in the suit instituted by Joe Bradshaw, Sr., to enforce collection of his judgment, is merely erroneous and voidable, or is void because the circuit court lacked jurisdiction to enter it and, as such, is subject to collateral attack. If this suit constitutes a collateral attack upon the decree of sale entered in the original suit on December 10, 1941, which as to the matters determined by that decree is final and appealable, and such decree, though erroneous and voidable, is not void for lack of jurisdiction of the court which pronounced it, the plaintiffs can not maintain this suit and any claim of the defendants for improvements made by them upon the land can not be established or allowed in this proceeding.

It is clear from the portions of the record in the original suit introduced in evidence in this case that the Circuit Court of Wayne County had jurisdiction of the subject matter of that suit and the parties to it. The plaintiffs Polly Adkins, then Polly Bradshaw, Vernon Bradshaw, Dolliver Bradshaw, Helen Ruth Blankenship, then Helen Bradshaw, and Jewell Blankenship, then Jewell Bradshaw, all of whom at that time were infants under the age of twenty one years, and Ella Gilkerson were named as defendants in the summons in that suit. E. D. Bunn, Administrator of the Estate of Bryan Bradshaw and E. D. Bunn, Guardian of the infant defendants, and Mack Gilkerson, who were also named as defendants, and Ella Gilkerson were personally served with process.

Though the record in that suit discloses irregularity in that the answers of the guardian ad litem of the infant defendants were filed October 23, 1941, but were not verified until December 2, 1941, the guardian ad litem was appointed by decree entered November 24, 1941, and recitals in the decree of sale entered December 10, 1941, which can not be refuted except by contradiction appearing in the record, show that the case was heard upon the bill of complaint and its exhibits regularly filed at rules, upon a decree nisi, upon service had upon the defendants, upon the several answers of the adult defendants and the separate answers of the infant defendants by their guardian ad litem, upon former orders and decrees made and entered, upon judgment entered against the defendants in the cause, and upon evidence taken in open court in behalf of the plaintiff and in support of his bill of complaint. These recitals are not contradicted by any facts to the contrary which appear from the record.

The infant defendants were not served with process in that suit, but under Section 10, Article 4, Chapter 56, Code, 1931, when a guardian ad litem for an infant defendant is appointed and accepts the appointment by filing an answer in behalf of the infant service of process is not required, the court has jurisdiction over them, and they are bound by its decree. See *Linn* v. *Collins*, 77 W.

Va. 592, 87 S. E. 934; *Chapman* v. *Branch,* 72 W. Va. 54, 78 S. E. 235; *Hansford* v. *Tate,* 61 W. Va. 207, 56 S. E. 372; *Ferrell* v. *Ferrell,* 53 W. Va. 515, 44 S. E. 187; *Eakin* v. *Hawkins,* 52 W. Va. 124, 43 S. E. 211; *Alexander* v. *Davis,* 42 W. Va. 465, 26 S. E. 291; *Hays* v. *Camden,* 38 W. Va. 109, 18 S. E. 461.

Though the record shows that the court in the original suit had jurisdiction of the subject matter of the suit and the, parties to it, numerous irregularities, defects and errors, consisting in part of omissions indicating failure to comply with substantial procedural requirements, are disclosed by the record and by the decree of sale of the land. One irregularity, which appears from the record, was the institution of the suit by the creditor within six months from the date of the qualification of the administrator of Bryan Bradshaw, deceased. As the administrator and the heirs and the widow of Bryan Bradshaw, deceased, were defendants in the suit and filed answers, the contents of which are not disclosed, and as the record does not show any objection by any of them to the institution of the suit by the creditor before the expiration of six months from the date of the qualification of the administrator, that irregularity was cured and the suit was not subject to dismissal because it was prematurely instituted by a creditor of the decedent. *Hess* v. *Casto,* 120 W. Va. 158, 197 S. E. 292.

Other defects shown by the record consist of the action of the court in hearing the case at the November Term, 1941, before it was regularly matured for hearing, in failing to convene the creditors of the decedent as required by Section 8, Article 8, Chapter 44, Code, 1941, in failing to assign to Ella Gilkerson, as the widow of Bryan Bradshaw, deceased, her dower in the land before decreeing its sale, and in failing to accord the debtor a reasonable time to redeem the land before sale. The defendants did not protest against the decree because of these defects. Whether their failure to do so cured the defects need not be determined in this proceeding and for the purpose of this suit the defects will be treated as

sufficient to render the decree erroneous and subject to reversal by direct attack on appeal.

In *Sites* v. *Sites,* 125 W. Va. 201, 23 S. E. 2d 624, the opinion contains this language: "Under Code, 44-8-7, we think it clear that the only way by which the real estate of a decedent can be sold is in a suit for that purpose, instituted by the personal representative of the decedent, or by a creditor. When such a suit is instituted there must be a convention of the creditors in the manner prescribed by statute, and an opportunity given them to present their claims. Until this procedure has been followed, there can be no proper decree for the sale of real estate, and even where it is alleged that the personal estate is insufficient to pay the debts, this can only be determined by a settlement of the personal estate, or a showing of the absence of such estate." The decree of sale in that case was held to be erroneous and one of the grounds upon which it was reversed by this Court on appeal was the entry of the decree of sale without the convention of the creditors of the decedent. "It is generally erroneous to decree sale of land, in which a widow is entitled to dower, to pay liens or debts against it without first assigning the widow her dower therein." Point 2, syllabus, *Sommerville* v. *Sommerville,* 26 W. Va. 484. See also *Gooch* v. *Gooch,* 70 W. Va. 38, 73 S. E. 56; 37 L.R.A. N.S. 930; *Underwood* v. *Underwood,* 22 W. Va. 303; *Laidley* v. *Kline,* 8 W. Va. 218. "A decree to sell land to satisfy liens thereon should accord to the debtor a reasonable time to redeem, and failure to do so is cause for reversal." Point 11, syllabus, *Abney-Barnes Company* v. *Davy-Pocahontas Coal Company,* 83 W. Va. 292, 98 S. E. 298. See also *King* v. *Burdett,* 44 W. Va. 561, 29 S. E. 1010; *Rohrer* v. *Travers,* 11 W. Va. 146. In each of the above cited cases in which the challenged decree was reversed in a direct attack upon it by appeal in the same suit, the decree was held to be erroneous but the error which constituted cause for reversal was not held to be jurisdictional or to render the erroneous decree void. In the opinion in *Blankenship* v. *Mongini,* 105 W. Va. 530, 143 S. E. 301, the effect of errors which constitute cause for reversal is considered and discussed.

If it be conceded that the foregoing defects in the decree of sale constituted cause for reversal of the decree in a direct attack upon it by proper proceeding in the case in the circuit court or by appeal or by bill of review, none of which remedies was resorted to by any of the defendants, those defects did not constitute jurisdictional error and did not affect the jurisdiction of the court. *Blankenship* v. *Mongini,* 105 W. Va. 530, 143 S. E. 301; *Stewart* v. *Tennant,* 52 W. Va. 559, 44 S. E. 223; *Hogan* v. *Ward,* 87 W. Va. 682, 106 S. E. 232. The effect of these defects was to render the decree of sale merely voidable and erroneous; but because of them the decree was not void.

In *Blankenship* v. *Mongini,* 105 W. Va. 530, 143 S. E. 301, this Court held in point 2 of the syllabus that "Where a court has lawfully acquired jurisdiction of the parties and the subject matter of the litigation, subsequent departure by the court from the rules of law or procedure in the excercise of that jurisdiction, is not jurisdictional error." In point 8, syllabus, in *Stewart* v. *Tennant,* 52 W. Va. 559, 44 S. E. 223, this Court said: "A decree entered in a cause, in which all interested parties are before the court, and upon a bill upon which such decree would have been proper, under certain conditions which might have been shown by proof, upon the allegations of the bill, to exist, is not void for want of jurisdiction, however erroneous it may be." In 11 Michie's Jurisprudence, Judgments and Decrees, Section 146, the text relating to erroneous or irregular judgments, which is supported by many decisions of this Court and of the Supreme Court of Appeals of Virginia, contains these statements: "While a judgment may be directly attacked for irregularity, this can only be done in a direct proceeding in the same court, or in an appellate court. If a court has jurisdiction, it is immaterial how erroneous its proceedings are, when its judgment is collaterally called in question." The same section also contains this language: "There is an obvious distinction between a case where the court has no jurisdiction to enter the judgment complained of, and a case where the court having a general jurisdiction over the subject matter has erroneously ex-

ercised it. In the latter case the judgment cannot be questioned in any collateral proceeding, and if not appealed from, is final; but where the court is without jurisdiction, its judgment must be treated as a mere nullity, and all proceedings under it, or dependent on it, are void."

The decree of sale entered in the original suit December 10, 1941, is also irregular in that it contains no recital to the effect that the personal estate of the decedent was insufficient for the payment of his debts or that there was no personal estate of the decedent. In *Schilb* v. *Moon*, 65 W. Va. 564, 64 S. E. 739, a decree of sale of the real estate of a decedent to pay a judgment lien, entered before the accounts of the administrator had been settled and the unadministered assets had been ascertained, was held to be erroneous and was reversed on appeal; but that decree, as pointed out in *Blankenship* v. *Mongini*, 105 W. Va. 350, 143 S. E. 301, was not held to be void.

The decree of sale in the original suit, however, expressly recites that the cause was heard upon the bill of complaint and its exhibits and upon evidence introduced in behalf of the plaintiff in support of the bill of complaint. The bill of complaint was not introduced in evidence by any of the parties to this suit and the nature and the extent of its allegations and of the proof offered to support them can not be determined from the record. As the court based the decree upon the bill of complaint and the proof offered to sustain its allegations and found that the plaintiff was entitled to the relief for which he prayed, it must be presumed, in the absence of any record showing to the contrary, that the allegations of the bill of complaint were sufficient and satisfied the essential requirements for the prosecution and the maintenance of a suit to subject the real estate of a decedent to the payment of his debts and that the circuit court had jurisdiction of the case. *Fink* v. *Fink*, 103 W. Va. 423, 137 S. E. 703; *Lemley* v. *Wetzel Coal and Coke Company*, 82 W. Va. 153, 95 S. E. 646; *Starcher* v. *South Penn Oil Company*, 81

W. Va. 587, 95 S. E. 28; *Allen* v. *Linger,* 78 W. Va. 277, 88 S. E. 837; *Central District and Printing Telegraph Company* v. *Parkersburg and Ohio Valley Electric Railway Company,* 76 W. Va. 120, 85 S. E. 65; *Jarrell* v. *Laurel Coal and Land Company,* 75 W. Va. 752, 84 S. E. 933, L.R.A. 1916E, 312; *Mullins* v. *Laurel Coal and Land Company,* 75 W. Va. 783, 84 S. E. 937; *Winding Gulf Colliery Company* v. *Campbell,* 72 W. Va. 449, 78 S. E. 384; *Bumgarner* v. *First National Bank of Parkersburg,* 70 W. Va. 787, 74 S. E. 996; *Plant* v. *Humphries,* 66 W. Va. 88, 66 S. E. 94, 26 L.R.A., N.S., 558; *White* v. *White,* 66 W. Va. 79, 66 S. E. 2, 135 Am. St. Rep. 1013, 24 L.R.A., N.S., 1279; *Town of Point Pleasant* v. *Greenlee,* 63 W. Va. 207, 60 S. E. 601, 129 Am. St. Rep. 971; *Horner* v. *Huffman,* 52 W. Va. 40, 43 S. E. 132; *Saint Lawrence Boom and Manufacturing Company* v. *Holt,* 51 W. Va. 352, 41 S. E. 351; *Moren* v. *American Fire-Clay Company,* 44 W. Va. 42, 28 S. E. 728; *Phelps* v. *Smith,* 16 W. Va. 522; *Hall* v. *Hall,* 12 W. Va. 1; *Ballard* v. *Thomas,* 19 Gratt. 14; *Cox* v. *Thomas,* 9 Gratt. 312; 31 Am. Jur., Judgments, Section 413; 11 Michie's Jurisprudence, Judgments and Decrees, Section 147; 49 C.J.S., Judgments, Section 425 (1).

In *Lemley* v. *Wetzel Coal and Coke Company,* 82 W. Va. 153, 95 S. E. 646, this Court quoted with approval these statements in 15 R.C.L., Judgments, Section 373, page 893: "According to the common law rule, adhered to at the present time in most of the states, the presumption in favor of the jurisdiction of a court of general jurisdiction is conclusive and its judgment cannot be collaterally attacked where no want of jurisdiction is apparent of record. Whenever the record of such a court is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that whatever ought to have been done was not only done but that it was rightly done. So where the judgment contains recitals as to the jurisdictional facts these are deemed to import absolute verity unless contradicted by other portions of the record. Consequently such a judgment cannot be collaterally attacked in courts of the same state by showing facts

aliunde the record, although such facts might be sufficient to impeach the judgment in a direct proceeding against it. The validity of a judgment when collaterally attacked must be tried by an inspection of the judgment roll alone, and no other or further evidence on the subject is admissible, not even evidence that no notice had been given."

This suit is manifestly a collateral attack upon the validity of the decree of sale entered December 10, 1941, in the original suit. In the bill of complaint the plaintiffs charge that the deed made by W. Earl Burgess, Special Commissioner, to the defendants is a nullity, that it was made by the special commissioner without any authority from the court, and that it constitutes a cloud upon the title of the plaintiffs to the property described in the deed. The relief prayed for is that the deed be set aside and declared to be void as a cloud upon the title of the plaintiffs; that it be cancelled; and that the defendants be required to account to the plaintiffs for the rents, issues and profits of the land from July 10, 1942.

The sale of the property by the special commissioner was made by him by virtue of the decree of sale and whether the deed made by him constitutes a cloud upon the title of the plaintiffs to the property ultimately depends upon and necessarily calls in question the validity of the decree of sale. That deed has been duly recorded for more than ten years before the institution of this suit and it should be regarded as a report of the sale and as a conveyance of an equitable title to the land. *McGinnis* v. *Caldwell*, 71 W. Va. 375, 76 S. E. 834, 43 L.R.A., N. S., 630. Under Section 6, Article 11, Chapter 37, Code, 1931, there is a presumption, in the absence of evidence to the contrary, that the special commissioner who executed the deed was authorized to convey the land conveyed by it, and that the title of all persons which the deed professes to convey, under judicial proceedings, did in fact pass by such deed. *Carmichael* v. *Reed*, 76 W. Va. 672, 86 S. E. 662; *Pardee* v. *Johnston*, 70 W. Va. 347, 74 S. E. 721.

If the decree of sale is valid the defendants as the purchasers of the land pursuant to the decree of sale have a right to seek confirmation of the sale and upon confirmation of the sale are entitled to a deed for the property purchased for them. *McGinnis* v. *Caldwell,* 71 W. Va. 375, 76 S. E. 834, 43 L.R.A., N. S., 630. In that case this Court said: "A court of equity would be slow to deprive such purchaser of his right after it had vested under its own decree and the rights of the parties as to liability of the land had been ended." If, however, the decree of sale is void the deed of the special commissioner is a nullity and is subject to cancellation in this suit as a cloud upon the title of the plaintiffs to the land embraced in the deed. In short, the right of the plaintiffs to a decree cancelling the deed as a cloud upon their title depends upon the validity of the decree of sale and involves an attack upon that decree.

In discussing the distinction between a direct attack and a collateral attack upon a judgment, in *Nelson Transfer and Storage Company* v. *Jarrett,* 110 W. Va. 97, 157 S. E. 46, this Court said: "In determining whether an attack upon a judgment is direct or collateral, the basic factor to be considered is whether the proceeding involves a review or annulment of the judgment, or a mere avoidance of its effect, as, for example, by preventing the enforcement of an execution predicated thereon. In the former instance the attack is direct; in the latter, collateral." See also *Newhart* v. *Pennybacker,* 120 W. Va. 774, 200 S. E. 350, 200 S. E. 754. In *Lough* v. *Taylor,* 97 W. Va. 180, 124 S. E. 585, this definition of a collateral attack upon a judgment is quoted with approval: "A collateral attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting, or modifying such judgment or decree." Concerning the distinction between a direct attack and a collateral attack upon a judgment the text in 31 Am. Jur., Judgments, Section 611, contains these statements: "Under this distinction, an attack is regarded as direct where the proceeding in

which it is made is brought for the purpose of impeaching or overturning the judgment, and as collateral if made in any manner other than by a proceeding the very purpose of which is to impeach or overturn the judgment. Stated affirmatively, this rule is that a collateral attack upon a judgment is an attack made by or in an action or proceeding that has an independent purpose other than the impeaching or overturning of the judgment, although impeaching or overturning the judgment may be necessary to the success of the action." In 49 C.J.S., Judgments, Section 408b, a collateral attack is defined as "an attempt to avoid, defeat, or evade a judgment, or to deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." In a suit to quiet title an attempt to attack a judgment affecting the land has been regarded as a collateral attack upon the judgment even though the petition contained a prayer that the judgment be vacated. 39 Am. Jur., Judgments, Section 616. See *Rowe* v. *Silbaugh*, 96 Wash. 138, 164 P. 923, L.R.A. 1918D, 466. See also 15 R.C.L., Judgments, Section 311, page 838. As the manifest purpose of this suit is to defeat or evade the decree of sale and avoid its force and effect in connection with the sale of the land, and not to review, annul, correct or modify the decree of sale, this suit must be regarded as a collateral attack upon that decree.

This Court has consistently held that a judgment or decree of a court of general jurisdiction affecting the subject matter of a proceeding in which it has jurisdiction of the subject matter can not be collaterally attacked unless it appears from the record of such proceeding that the court acted without jurisdiction and that because of such action the judgment or decree was void. *Lemley* v. *Wetzel Coal and Coke Company*, 82 W. Va. 153, 95 S. E. 646; *Bell* v. *Brown*, 116 W. Va. 484, 182 S. E. 579; *Nelson Transfer and Storage Company* v. *Jarrett*, 110 W. Va. 97, 157 S. E. 46; *Fink* v. *Fink*, 103 W. Va. 423, 137 S. E. 703; *Lough* v. *Taylor*, 97 W. Va. 180, 124 S. E. 585; *Horner* v. *Huffman*, 52 W. Va. 40, 43 S. E. 132; *Smith* v. *Johnson*, 44 W. Va. 278, 29 S. E.

509; *First National Bank of Ceredo* v. *Huntington Distilling Company*, 41 W. Va. 530, 23 S. E. 792, 56 Am. St. Rep. 878; *Wandling* v. *Straw*, 25 W. Va. 692; *Hall* v. *Hall*, 12 W. Va. 1. See also *McKnight* v. *Pettigrew*, 141 W. Va. 506, 91 S. E. 2d 324; *State ex rel. Lovejoy* v. *Skeen*, 138 W. Va. 901, 78 S. E. 2d 456, certiorari denied, 349 U. S. 940, 75 S. Ct. 786, 99 L. ed. 1268; *Newhart* v. *Pennybacker*, 120 W. Va. 774, 200 S. E. 350, 200 S. E. 754; *Crickmer* v. *Thomas*, 120 W. Va. 769, 200 S. E. 353; *Hatfield* v. *United States Coal and Coke Company*, 111 W. Va. 289, 161 S. E. 572; *Bailey* v. *Firemen's Insurance Company*, 108 W. Va. 75, 150 S. E. 365; *Blankenship* v. *Mongini*, 105 W. Va. 530, 143 S. E. 301; *State ex rel. Smith* v. *Hall*, 94 W. Va. 400, 119 S. E. 166; *Hogan* v. *Ward*, 87 W. Va. 682, 106 S. E. 232; *Starcher* v. *South Penn Oil Company*, 81 W. Va. 587, 95 S. E. 28; *Allen* v. *Linger*, 78 W. Va. 277, 88 S. E. 837; *State* v. *Emsweller*, 78 W. Va. 214, 88 S. E. 787; *Linn* v. *Collins*, 77 W. Va. 592, 87 S. E. 934; *Jarrell* v. *Laurel Coal and Land Company*, 75 W. Va. 752, 84 S. E. 933, L.R.A. 1916E, 312; *Mullins* v. *Laurel Coal and Land Company*, 75 W. Va. 783, 84 S. E. 937; *State* v. *Citizens' Trust and Guaranty Company*, 72 W. Va. 181, 77 S. E. 902; *Chapman* v. *Branch*, 72 W. Va. 54, 78 S. E. 235; *Bumgarner* v. *First National Bank of Parkersburg*, 70 W. Va. 787, 74 S. E. 996; *Town of Point Pleasant* v. *Greenlee*, 63 W. Va. 207, 60 S. E. 601, 129 Am. St. Rep. 971; *Hansford* v. *Tate*, 61 W. Va. 207, 56 S. E. 372; *Saint Lawrence Boom and Manufacturing Company* v. *Holt*, 51 W. Va. 352, 41 S. E. 351; *Watt* v. *Brookover*, 35 W. Va. 323, 13 S. E. 1007, 29 Am. St. Rep. 811; *Evans* v. *Spurgin*, 6 Gratt. 107, 52 Am. Dec. 105. In *Newhart* v. *Pennybacker*, 120 W. Va. 774, 200 S. E. 350, 200 S. E. 754, this Court said, in point 4 of the syllabus, that "A judgment, valid on its face and rendered by a court of general jurisdiction having jurisdiction of both parties and subject matter, is not open to collateral attack." In *Linn* v. *Collins*, 77 W. Va. 592, 87 S. E. 934, point 7 of the syllabus is in these words: "An erroneous decree, not void for want of jurisdiction, is not subject to collateral impeachment."

Under the holdings in the cases just cited a suit to cancel, as a cloud upon the title of the plaintiffs, deed made by a special commissioner for land sold by him and purchased by the defendants pursuant to a decree of sale rendered by a court of general jurisdiction in a suit in which such court had jurisdiction of the subject matter and the parties, which sale has not been confirmed and which decree, though erroneous, is not void, is a collateral attack upon such decree and can not be maintained.

This suit, being a collateral attack upon a judgment which, though erroneous, was not void, can not be maintained. The circuit court should have sustained the demurrer to the bill of complaint and, having refused to do so, should have dismissed the suit upon final hearing.

Though the plaintiffs can not maintain this suit or obtain in it the relief which they seek, other remedies are available to them. See *McGinnis* v. *Caldwell*, 71 W. Va. 375, 76 S. E. 834, 43 L.R.A., N. S., 630.

The final decree of the circuit court is reversed and this suit is remanded to that court with directions that it be dismissed at the cost of the plaintiffs.

*Reversed and remanded*
*with directions.*

GIVEN, JUDGE, dissenting:

This proceeding was prosecuted for the express and only purpose of having annulled a decree of sale of real estate entered in a chancery cause which decreed the sale of real estate to satisfy a judgment. The present suit is independent, separate or distinct from the old chancery cause. In the instant suit it is alleged that the prior suit "purports to be brought on a judgment lien to subject the sale of real estate to satisfy the judgment and that said suit was not instituted by Joe Bradshaw, Sr., for the benefit of himself and all other creditors", and the answer to the bill of complaint admits that the old "chancery suit was brought in said court to enforce the judgment lien of $792.00 against said real estate"; that

the decree entered in the old suit was "void" for the reason that "no process was ever executed and delivered" to any of plaintiffs except Ella Gilkerson; that plaintiffs "had no knowledge" of the pendency of the suit; that the suit was not matured for hearing at the time of the entry of the decree of sale; that the sale was never advertised as required by statute; that the creditors were not convened; and that no order was ever entered confirming the alleged sale. In addition, the decree of sale entered in the old chancery suit shows on its face that there was no finding or adjudication as to whether the "rents and profits of the real estate" alleged to be subject to the lien of the judgment were insufficient to "satisfy the judgment in five years". Neither does the decree show any finding or adjudication that "an execution or fieri facias" had been issued or returned or that such an execution or fieri facias had not issued within two years from the date of the judgment.

Depositions were filed in the independent suit establishing definitely, and the circuit court found and held, in effect, that the allegations of the bill had been proved. The original file of the old chancery cause was before the court, and it is definitely shown that no convening of creditors was had; that the decree of sale was entered before the cause had matured; that no finding or adjudication was made as to whether the "rents and profits of the real estate" alleged to be subject to the lien of the judgment were insufficient to "satisfy" in five years the judgment sought to be enforced; and that no finding or adjudication was made as to any question relating to the issuance or return of any execution or fieri facias.

The authorities are practically unanimous in holding that a judgment may be directly attacked as being void, not merely voidable, in such an independent proceeding as the instant cause, and that such an attack may be made whether the fatal defect appears on the face of the judgment attacked, on the face of the record of the case wherein the judgment attacked was entered, or on independent evidence produced in support of proper al-

legations. This is clearly and unequivocally held in *Smith* v. *Johnson,* 44 W. Va. 278, 29 S. E. 509. See *Stephenson* v. *Ashburn,* 137 W. Va. 141, 70 S. E. 2d 585; *Bennett* v. *Bennett,* 137 W. Va. 179, 70 S. E. 2d 894; *Cable* v. *Cable,* 132 W. Va. 620, 53 S. E. 2d 637; *Chilhowie Lumber Co.* v. *Lance & Co.,* 50 W. Va. 636, 642, 41 S. E. 128. In 49 C.J.S., Judgments, Section 421, it is said: "A judgment or decree which is void for want of jurisdiction is open to contradiction or impeachment in a collateral, as well as a direct, proceeding. In order to be collaterally attacked the want of jurisdiction must affirmatively appear on the face of the record, and the facts showing the want of jurisdiction must be alleged." In the same section, it is pointed out that "* * * although the court has jurisdiction of the parties and subject matter, the judgment is void for want of jurisdiction with respect to the power of the court to render the particular judgment or decree, as where the court, in entertaining jurisdiction and rendering judgment in a particular case, exceeds the powers conferred on it by constitutional or statutory provisions * * *". See 31 Am. Jur., Judgments, Sections 597 and 604; 11 M.J., Judgments and Decrees, Section 145. West Virginia decisions cited in the majority opinion are in accord. See *White Sulphur Springs, Inc.* v. *Ripley,* 124 W. Va. 486, 20 S. E. 2d 794.

Code, 38-3-9, provides that the lien of a judgment may be enforced in a court of equity only "If it appear to such court that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years * * *". Another condition precedent to the power of the court to enter such a decree of sale is provided by that section in this language: "The lien of a judgment may be enforced in a court of equity after an execution or fieri facias thereon has been duly returned to the office of the court or to the justice from which it issued showing by the return thereon that no property could be found from which such execution could be made: Provided, that such lien may be enforced in equity without such return when an execution of fieri facias

has not issued within two years from the date of the judgment * * *".

In *Westinghouse Lamp Co.* v. *Ingram,* 79 W. Va. 220, 90 S. E. 837, this Court held: "1. A judgment debtor's real estate can not be decreed for sale to pay the judgment liens thereon until such real estate has been properly ascertained and it appears to the court that the rents and profits thereof will not satisfy such liens within five years." In the opinion, the Court said: "The law is plain as to the duty of the court in enforcing judgment liens against real estate. It says: 'If it appear to such court that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years, the court may decree the said real estate, or any part thereof to be sold and the proceeds applied to the discharge of the judgment.' Section 7, chapter 139 of the Code. This is a condition precedent to the right to sell. No sale can be had unless the rents and profits will not satisfy the judgment in five years. This must affirmatively appear. This has been the law since 1882. *Newlon et al.* v. *Wade et al.,* 43 W. Va. 283; point 3 of the syllabus, *Dunfee* v. *Childs,* 45 W. Va. 155." To the same effect is the holding in *Abney-Barnes Co.* v. *Davy-Pocahontas Coal Co.,* 83 W. Va. 292, 300, 98 S. E. 298. These cases appear to leave no doubt that before decreeing the sale of real estate for the satisfaction of a judgment, the court, before entering a decree of sale, must have "ascertained" that the rents and profits will not satisfy the judgment within five years and that the provision in the statute constitutes "a condition precedent to the right to sell". Courts act only by their orders and, since no decree shows any ascertainment of the jurisdictional fact, the decree appears without question to be void. If void, it may be, under the authorities cited, attacked, collaterally or directly. I am not unaware of the fact that the bill of complaint in the old chancery cause was not produced and that it may possibly have contained all necessary allegations to bring the matter before the court. However, allegations can not amount to an ascertainment of a fact. The fact remains that the court did not "ascertain" such

facts and that the only decrees entered in that cause, brought before the court, show no such finding was made.

Yet, for another reason, the decree of sale is void on its face, for lack of jurisdiction of the court. The record in the old chancery cause, before the trial court, does not show, nor does it otherwise appear, that an execution was first issued directed to the sheriff of the county wherein the judgment debtor "resided", as to the judgment lien sought to be enforced, before the institution of that cause. In *Lewis, Trustee* v. *Fisher, Judge,* 114 W. Va. 151, 171 S. E. 106, this Court held: "In order to give a circuit court jurisdiction to entertain a judgment lien creditors' suit to subject the real estate of the judgment debtor to the lien of the judgment, it must appear that an execution was first issued directed to the sheriff of the county wherein the judgment debtor resides, if a resident of this state, and that such execution was returned 'no property found'." In the opinion, the Court stated: "* * * It is thus seen that the lien of a judgment upon land is purely statutory. Being a purely statutory lien, the jurisdiction of a court of equity, whether it be inherent or whether it be conferred by statute, is in any event based upon the statute, and the court of equity taking jurisdiction for its enforcement may not extend it to cases not provided for in the statute itself. *Canal Company* v. *Gordon,* 6 Wallace 561, 18 L. Ed. 894; *Aldine Mfg. Co.* v. *Phillips,* 118 Mich. 162, 76 N. W. 371, 74 Am. St. Rep. 380, 42 L.R.A. 531; *Buchan* v. *Sumner,* (N.Y.) 2 Barbour's Chancery 165, 47 Am. Dec. 305.

"Having determined that both the lien and the remedy for its enforcement are dependent upon the statute, the question arises: is the issuance and return 'no property found' upon an execution made a jurisdictional matter by the statute in question? We think that it undoubtedly is. This requirement is intended to be the statutory method by which it is shown that the legal remedy has been pursued without result. Under the statute, it is then and then only that court of equity takes jurisdiction to

grant relief by enforcing the lien of a judgment against land * * *". See *Cooper* v. *Mullenax*, 126 W. Va. 256, 28 S. E. 2d 426; *Early* v. *Fogle & Co.*, 125 W. Va. 466, 24 S. E. 2d 899; *United States Fidelity and Guaranty Co.* v. *Eary, Judge*, 116 W. Va. 477, 181 S. E. 817.

In the case of *Mills* v. *Woods*, 133 W. Va. 689, 57 S. E. 2d 713, we held: "A special commissioner's deed for land, containing a provision not in conformity with the requirements of the decree confirming sale and directing execution of the deed, is *pro tanto* void." Is it logically consistent to hold that a special commissioner's deed is "void" because not in "conformity" with the decree of confirmation, while a special commissioner's deed is "not void" where there was no attempt to enter such a decree?

In my view, these plain, precise holdings as to the statute controlling, and as to the exact questions here involved, should be not overlooked or ignored, and, when considered, they require a conclusion just opposite the conclusion reached by the majority.

For the reasons indicated, I respectfully dissent. I would affirm the final decree of the Circuit Court of Wayne County.